Opinion issued July 6, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00653-CR






VICTOR KOADINITA UTOMI, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1006912






O P I N I O N

 A jury found appellant, Victor Koadinita Utomi, guilty of the offense of
possession of a controlled substance in an amount over four grams and less than 200
grams with intent to deliver. (1) The indictment included enhancement paragraphs for
two prior felony convictions. After finding both enhancement paragraphs true, the
trial court assessed appellant's punishment at 40 years' confinement. In three issues,
appellant argues that (1) the evidence is legally and factually insufficient to prove that
he (a) possessed cocaine (b) with the intent to deliver and (2) the trial court
committed reversible error by making an improper comment during voir dire.

 We affirm.

Background

 In 2004, Houston Police Officer C. Riggs was assigned to investigate narcotics
complaints. Riggs frequently worked with confidential informant Michelle Johnson. 
In November 2004, Johnson contacted Riggs and informed him that she had learned
that someone was dealing drugs out of an apartment located at 9445 Concourse in
Southwest Houston. On November 8, 2004, Riggs arranged for Johnson to make a
controlled buy from the apartment and provided her with $50 to do so. Johnson
approached the apartment and knocked on the door. A man, whom Johnson identified
in open court as appellant, answered the door, told Johnson to wait outside, and
returned moments later with $50 worth of crack cocaine, which he sold to Johnson. 
Riggs remained in his automobile during the transaction. Although he was able to see
Johnson from his vantage point, Riggs testified that he could not identify the man
who opened the door to the apartment and sold the drugs to Johnson. Johnson
described the man to Riggs as being a black male between approximately 6'1" and
6'3" tall and weighing between 200 and 230 pounds. 

 On November 9, 2004, Riggs obtained a warrant to search the apartment from
which Johnson had purchased the cocaine. The warrant described the apartment as
being "in control of a black male, whose name is unknown, more fully described as
25-28 years old, 6'00" to 6'03" tall, weighing 200 to 220 pounds, dark brown
complexion and short black hair." The following day, Riggs and a team of police
officers executed the search warrant. After knocking and receiving no answer, the
officers used a metal ramming device to gain entry through the front door. Inside,
they found appellant alone in the apartment sleeping on the living room floor. Riggs
testified that a small amount of marijuana was found in an envelope on the floor next
to appellant. Flakes of marijuana were also found lying about the apartment. A
search also uncovered approximately 35 grams of cocaine stored inside a kitchen
cabinet next to the sink. According to Officer Riggs, the cocaine was visible to
anyone who opened the cabinet. In addition, a small amount of PCP (phencyclidine)
was found inside the refrigerator. Appellant stated that the cocaine and PCP did not
belong to him and that he was unaware of their presence inside the apartment. Riggs
testified that he found clothing in the living room, bedroom, and bedroom closet that
appeared to be appellant's size. 

 At trial, the apartment's lessee, Alicia Kadiri, testified that appellant was an
acquaintance and had come to her apartment to rest at approximately 5:00 a.m. on
November 10, the day Riggs executed the warrant. Kadiri stated that at the time of 
the search, she was dating a man named Saboo who went by the nickname "Boo." 
According to Kadiri, Boo is a black male who is roughly six feet tall and weighs over
200 pounds, approximately the same size as appellant. Kadiri stated that she had a
falling out with Boo shortly before appellant's arrest and had neither seen nor heard
from Boo since the day Officer Riggs executed the warrant. 

 Kadiri indicated that she frequently had large groups of people over to her
apartment for social occasions, sometimes as many as 10 to 12 people at a time. She
further testified that on the evening of November 9, she had retrieved some items
from the cabinet where the cocaine was found. Kadiri stated that she did not observe
any cocaine in the cabinet when retrieving the items and was surprised to learn of its
discovery. She indicated that, in addition to appellant, three individuals had visited
her between the time she last looked in the cabinet and the execution of the search
warrant on November 10. 

Possession

 In his first issue, appellant contends that the evidence presented at trial is
legally and factually insufficient to prove that he possessed the cocaine. More
specifically, appellant contends that the State failed to prove that he exercised care,
custody, control, or management over the cocaine. 

 Legal Sufficiency

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all the
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. King, 29 S.W.3d at 562.

 Appellant was charged with the knowing possession of more than four grams
but less than 200 grams of cocaine with the intent to deliver. See Tex. Health &
Safety Code Ann. § 481.112(a), (d) (Vernon 2003). To prove unlawful possession
of a controlled substance, the State must prove that the accused (1) exercised care,
custody, control, or management over the contraband, (2) was conscious of his
connection with it, and (3) knew what it was. See id. §§ 481.002(38), 481.112(a)
(Vernon 2003); Swarb v. State, 125 S.W.3d 672, 684 (Tex. App.--Houston [1st Dist.]
2003, pet. dism'd). When contraband is not found on the accused's person or when
the accused is not in exclusive possession of the place where the contraband is found,
we cannot conclude that the accused had knowledge of and control over the
contraband unless the State establishes a link (2) between the accused and the
contraband--i.e., independent facts and circumstances that link the accused to the
contraband so as to suggest that the accused had knowledge of the contraband and
exercised control over it. (3) Rhyne v. State, 620 S.W.2d 599, 601 (Tex. Crim. App.
1981); Robinson v. State, 174 S.W.3d 320, 325 (Tex. App.--Houston [1st Dist.]
2005, pet. ref'd); Swarb, 125 S.W.3d at 684. The link may be established through
either direct or circumstantial evidence. Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995).

 The link terminology does not constitute a unique legal rule, but is only a
shorthand way of expressing what must be proven to establish that drugs were
possessed knowingly or intentionally. Id. at 747. Texas courts have identified
several factors that may help to establish a link between the accused and the
contraband, including whether (1) the defendant was present when the drugs were
found; (2) the contraband was in plain view; (3) the defendant was in proximity to the
drugs and had access to them; (4) the defendant was under the influence of drugs
when arrested; (5) the defendant possessed other contraband; (6) the defendant made
incriminating statements when arrested; (7) the defendant attempted to flee; (8) the
defendant made furtive gestures; (9) the odor of the drug found was present; (10) the
defendant owned or had the right to possess the place where the drugs were found; 
(11) the drugs were found in an enclosed place; (12) the amount of drugs found was
significant; (13) the defendant possessed a weapon; and (14) the defendant possessed
a large amount of cash. Swarb, 125 S.W.3d at 684. Although several factors relevant
to establishing the necessary link have been identified, the number of factors
supported by the evidence is not as important as the "logical force" they collectively
create to prove that a crime has been committed. Roberson v. State, 80 S.W.3d 730,
735 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (quoting Whitworth v. State,
808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd)). Evidence that links the
accused to the drugs must establish a connection that was more than fortuitous. 
Brown, 911 S.W.2d at 747.

 When police raided the apartment, appellant was asleep on the living room
floor; no one else was present in the apartment. Police searched the apartment and
found approximately 35 grams of crack cocaine hidden in a kitchen cabinet next to
the sink. Officer Riggs testified that 35 grams of crack cocaine has a street value of
approximately $3,500 and is not an amount consistent with personal use. Police also
found a bottle of PCP in the refrigerator and an envelope containing marijuana on the
floor next to appellant. A few flakes of marijuana were also found lying about the
apartment. Officer Riggs further testified that appellant appeared to be living in the
apartment because he found clothing in the living room, bedroom, and bedroom
closet that was consistent with appellant's size. Although appellant's name was not
on the apartment's lease, Officer Riggs explained that very few drug dealers sell
drugs out of their own house or apartment, but rather sell out of a house or apartment
in someone else's name. Moreover, Johnson testified that she had purchased $50
worth of crack cocaine at this apartment from a man whom she identified in open
court as appellant only a few days before police raided the apartment.

 Appellant contends, however, that "to determine the sufficiency of the
evidence, this [c]ourt must first eliminate the testimony of the informant [Michelle
Johnson] and ask whether other inculpatory evidence tends to connect . . . [a]ppellant
to the commission of the offense." See Tex. Code Crim. Proc. Ann. art. 38.141
(Vernon 2005). Appellant confuses the standards of proof for the sufficiency of
corroborating evidence and for legal and factual sufficiency of the evidence to
support the verdict as a whole. A challenge of insufficient corroboration is not the
same as a challenge of insufficient evidence to support the verdict. See Cathey v.
State, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999); Simmons v. State, 205
S.W.3d 65, 72 (Tex. App.--Fort Worth 2006, no pet.); Cantelon v. State, 85 S.W.3d
457, 460 (Tex. App.-Austin 2002, no pet.). When, as here, we are asked to review
the legal sufficiency of the evidence, we review all the evidence in the light most
favorable to the judgment to determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. See Wesbrook,
29 S.W.3d at 111. When asked to review factual sufficiency, we review all the
evidence in a neutral light. See Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App.
1999). We do not eliminate the testimony of an informant when analyzing the legal
and factual sufficiency of the evidence as a whole. See Smith v. State, No. 2-04-120-CR, 2005 WL 852144, at *5 (Tex. App.--Fort Worth Apr. 14, 2005, pet. ref'd) (not
designated for publication) ("[W]hen reviewing the legal and factual sufficiency of
the evidence, we consider all of the evidence, including accomplice-witness
testimony."); see also Simmons, 205 S.W.3d at 71.

 Appellant does not challenge the sufficiency of the corroborating evidence but
rather the legal and factual sufficiency of the evidence as a whole. Thus, in
evaluating the legal and factual sufficiency of the evidence, we do not eliminate
Johnson's testimony. Viewing all the foregoing evidence in the light most favorable
to the verdict, we conclude that a jury could have found beyond a reasonable doubt
that appellant exercised care, custody, control or management of the crack cocaine. 
See Wesbrook, 29 S.W.3d at 111; King, 29 S.W.3d at 562. (4)

 We overrule the legal sufficiency portion of appellant's first issue.

 Factual Sufficiency

 We begin the factual sufficiency review with the presumption that the evidence
supporting the jury's verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, (5) and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or the conflicting evidence is against the great weight
and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000). Regarding the second basis for a finding of factual insufficiency,
"an appellate court must . . . be able to say, with some objective basis in the record,
that the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict before [the court] is justified in exercising its appellate
fact jurisdiction to order a new trial." Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006) (emphasis omitted). Our evaluation may not intrude upon the fact
finder's role as the sole judge of the weight and credibility accorded any witness's
testimony. Cain v. State, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997). What
weight to be given contradictory testimonial evidence is within the sole province of
the fact finder because it turns on an evaluation of credibility and demeanor. Id. at
408-09. The fact finder may choose to believe all, some, or none of the testimony
presented. Hughes v. State, 897 S.W.2d 285, 289 (Tex. Crim. App. 1994). We must
defer appropriately to the fact finder to avoid substituting our judgment for its 
judgment. See Johnson, 23 S.W.3d at 12. For a review of factual sufficiency, we
must consider the most important evidence that appellant claims undermines the
verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

 Appellant argues that the evidence is factually insufficient to support the
verdict because Kadiri testified that several people had been in the apartment between
the time of the controlled buy and the raid, including Saboo, whose description more
closely matches that given by Johnson than appellant's description does. Appellant
also cites White v. State, 890 S.W.2d 131 (Tex. App.--Texarkana 1994, pet. ref'd). 
In White, the police executed a search warrant for the appellant's house and found
large quantities of marijuana. Id. at 134, 138. After searching the house, police
searched a boat parked in a vacant lot next door and found cocaine hidden in a tackle
box. Id. at 134. The Texarkana Court of Appeals held that the evidence was factually
insufficient to support the appellant's cocaine conviction because "the jury's finding
that [the appellant] had care, custody, and control of the cocaine in the vacant lot is
. . . against the great weight and preponderance of the evidence." Id. at 139. In its
analysis, the court observed that the State had not sufficiently shown that the
appellant either owned or was linked to the vacant lot, the boat, the tackle box, or the
cocaine found in the tackle box. Id. The only evidence connecting appellant was the
fact that when police arrived to execute the search warrant for his house, appellant
and several others were in the vacant lot. Id. 

 While the facts of White are similar to those present here, we cannot ignore the
facts that Johnson identified appellant in open court as the man who sold her crack
cocaine during the controlled buy, appellant answered to the description given by
Johnson and was asleep in the apartment when Officer Riggs entered, clothing in
appellant's size was found in the apartment, and cocaine was found in a kitchen
cabinet. The jury has the sole province to decide what weight is to be given to
contradictory testimony, as the determination turns on an evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408-09. A jury is free to believe any or all of the
testimony of the State's witnesses. Hughes, 897 S.W.2d at 289. The jury's decision,
therefore, is not manifestly unjust merely because the jury resolved conflicting views
of evidence in favor of the State. Cain, 958 S.W.2d at 410. Here, the jury was free
to discredit Kadiri's testimony and conclude that appellant was the man in the
apartment who sold the crack cocaine to Johnson.

 Thus, after neutrally examining all the evidence, we find that the proof of guilt
was not so weak that the verdict is clearly wrong or manifestly unjust; nor is the
verdict against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 10-11.

 We overrule the factual sufficiency portion of appellant's first issue.

Intent to Deliver

 In his second issue, appellant argues that the evidence is insufficient to prove
that he intended to deliver the crack cocaine. Although appellant does not distinguish
between legal and factual sufficiency, we will review the record for both.

 Legal Sufficiency

 To prove the offense of possession of a controlled substance with the intent to
deliver, the State must prove, in addition to possession, that the accused intended to
"transfer, actually or constructively, to another a controlled substance . . . ." Tex.
Health & Safety Code Ann. § 481.002(8) (Vernon 2006), § 481.112(a). Intent to
deliver a controlled substance can be proved by circumstantial evidence, including
evidence regarding an accused's possession of the contraband. Mack v. State, 859
S.W.2d 526, 528 (Tex. App.--Houston [1st Dist.] 1993, no pet.). An oral expression
of intent is not required. Robinson, 174 S.W.3d at 331. Additional factors that courts
have considered in determining whether the accused had the intent to deliver include
(1) the nature of the location at which the accused was arrested; (2) the quantity of
contraband in the accused's possession; (3) the manner of packaging; (4) the
presence, or lack thereof, of drug paraphernalia for either use or sale; (5) the
accused's possession of large amounts of cash; and (6) the accused's status as a drug
user. Williams v. State, 902 S.W.2d 505, 507 (Tex. App.--Houston [1st Dist.] 1994,
pet. ref'd). Expert testimony by experienced law enforcement officers may also be
used to establish an accused's intent to deliver. See Mack, 859 S.W.3d at 529
(relying, in part, on police officer's testimony "that circumstances logically indicated
appellant's intent to deal, rather than use, the crack cocaine he possessed").

 In support of his legal sufficiency argument, appellant cites Garrett v. State,
161 S.W.3d 664 (Tex. App.--Fort Worth 2005, pet. ref'd). That case, however, is
distinguishable from the instant case. In Garrett, police observed the appellant and
Aikeysha Callandret, a resident of the house where the appellant was arrested,
attempting to flush several bags of cocaine down the toilet. Id. at 671. On two
previous occasions, Callandret had sold crack cocaine to an informant. Id. at 667. 
The appellant was present at the house during both controlled buys. Id. The
appellant was subsequently convicted of possession with intent to deliver the cocaine. 
Id. at 667-68. On appeal, however, the Fort Worth Court of Appeals held that the
evidence was legally insufficient to prove that the appellant intended to deliver the
cocaine. Id. at 671. The court noted that the State had offered no evidence linking
the appellant to the residence, other than his mere presence, or to any of the drugs or
drug paraphernalia found throughout the house; nor was there any evidence that the
appellant had money or contraband on him when he was arrested; nor was there any
evidence that he was involved in selling drugs. Id. at 671. The evidence that the
appellant had attempted to destroy the cocaine and was and had been present in a
house from which drugs were sold was sufficient to show that he possessed the
cocaine, not that he intended to deliver it. Id.

 Here, as in Garrett, the State presented no evidence that appellant possessed
a large amount of cash or that any contraband or paraphernalia for the personal
consumption of the crack cocaine was found on his person. However, unlike the
appellant in Garrett, who did not sell the crack cocaine to the informant, Johnson
testified that she purchased $50 worth of crack cocaine from a man whom she
identified in open court as appellant only a few days before police raided the
apartment. 

 Additionally, police confiscated approximately 35 grams of crack cocaine,
which, according to Officer Riggs, has a street value of approximately $3,500 and is
not an amount consistent with personal use, and the record does not reflect that police
found paraphernalia for the personal consumption of crack cocaine anywhere in the
apartment. Officer Riggs further testified that, although the apartment had been
rented to Kadiri, drug dealers do not commonly sell drugs out of their own house or
apartment, but rather sell from a house or apartment in someone else's name.

 Viewing all the foregoing evidence in the light most favorable to the verdict,
we conclude that a jury could have found beyond a reasonable doubt that appellant
intended to deliver the crack cocaine. See Wesbrook, 29 S.W.3d at 111; King, 29
S.W.3d at 562. 

 We overrule the legal sufficiency portion of appellant's second issue.

 Factual Sufficiency

 The only contradictory evidence presented was Officer Riggs's testimony that
appellant, during his arrest, stated that the drugs found in the apartment were not his. 
Again, we cannot ignore that Johnson identified appellant in open court as the man
in the apartment who sold her the crack cocaine. As we stated above, the jury has the
sole province to decide what weight is to be given to contradictory testimony. Cain,
958 S.W.2d at 408-09. Hence, the jury was free to discredit appellant's statement to
Officer Riggs that the drugs did not belong to him and conclude that appellant was
the man in the apartment who sold the crack cocaine to Johnson and, therefore,
possessed the cocaine with the intent to deliver it.

 Thus, after neutrally examining all the evidence, we find that the proof of guilt
was not so weak that the verdict is clearly wrong or manifestly unjust; nor is the
verdict against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 10-11.

 We overrule the factual sufficiency portion of appellant's second issue.

Voir Dire

 In his third issue, appellant argues that the trial court committed reversible
error during voir dire when it said that if appellant were found not guilty he would go
home. Appellant contends that this comment was the equivalent of a judge
commenting on the evidence and therefore improper and harmful because
(1) appellant was on probation and would not likely go home even if found not guilty
and (2) it left the venire members with the impression that, if found not guilty,
appellant would go home at the same time they went home.

 In explaining to the venire members how the trial would proceed, the trial court
stated, 

 Then both lawyers get to make their closing statements . . . and then we
send the 12 of you back to the jury room to deliberate the case. At this
point your focus is: Did the State prove the defendant's guilt beyond a
reasonable doubt? If they did, you find him guilty. If they didn't, you
find him not guilty.


 If you find him . . . not guilty, that ends the trial. You go home,
he goes home, end of trial.


 If you find him guilty, the punishment will be assessed by the
Court.


Appellant voiced no objection to this explanation. 

 By failing to object, appellant has waived review of this issue on appeal. See
Tex. R. App. P. 33.1(a) (requiring timely and reasonably specific objection followed
by adverse ruling to preserve error for appellate review); Fuentes v. State, 991 S.W.2d
267, 276 (Tex. Crim. App. 1999) (holding that appellant's failure to object to trial
court's improper comments during voir dire waived appellate review).

 We overrule appellant's third issue. 

Conclusion

 We affirm the judgment of the trial court.


 

 Evelyn V. Keyes

 Justice 


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon 2003). 
2. Although the necessary connection between the accused and the contraband was once
referred to as an "affirmative link," we now simply refer to it as a "link." See Evans v. State,
202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).
3. This rule serves to protect the innocent bystander from conviction based solely upon his
fortuitous proximity to someone else's drugs; it restates the common-sense notion that even
if a person jointly possesses property, such as a house or a car, he may not necessarily jointly
possess contraband found in that house or car. Robinson v. State, 174 S.W.3d 320, 325 n.2
(Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (citing Poindexter v. State, 153 S.W.3d
402, 406 (Tex. Crim. App. 2005)).
4. We note that the legislature has imposed the same standards of corroboration for an
informant's testimony as for an accomplice's. See Cantelon v. State, 85 S.W.3d 457, 460
(Tex. App.--Austin 2002, no pet.); see also Simmons v. State, 205 S.W.3d 65, 71 (Tex.
App.--Fort Worth 2006, no pet.) (noting that in interpreting article 38.141, courts have
looked to article 38.14, a substantially similar statute that requires corroboration of
accomplice witness testimony). To determine the sufficiency of the corroboration, we
eliminate the testimony of the person acting covertly or with the accused and ask whether
other inculpatory evidence tends to connect the accused to the commission of the offense,
even if it does not directly link the accused to the crime. See McDuff v. State, 939 S.W.2d
607, 612 (Tex. Crim. App. 1997) (applying article 38.14 to accomplice testimony). All the
law requires to corroborate accomplice or informant testimony is "some non-accomplice
evidence which tends to connect the accused to the commission of the offense," even if it
does not directly link the accused to the crime. Cantelon, 85 S.W.3d at 460-61 (emphasis
in original); see also Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). We
review the corroborating evidence in the light most favorable to the verdict. Cantelon, 85
S.W.3d at 461. Non-accomplice or non-informant testimony that generally tends to prove
the truth of an accomplice's or informant's version of events is corroborative, even if it
"concerns a mere detail, as opposed to a substantive link between the defendant and
commission of the offense." Beathard v. State, 767 S.W.2d 423, 430 (Tex. Crim. App.
1989). Here, a number of details other than Johnson's testimony link appellant to the
offense, including his presence in the same apartment when Officer Riggs searched it; his
similarity to Johnson's physical description of the man who sold her the crack cocaine; the
presence of cocaine in the apartment; and the presence of clothing that appeared to be
appellant's size in the apartment living room, bedroom, and bedroom closet.
5. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).