# NO. 12-07-00368-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KEVIN WAYNE MURPHY,*<br>*APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Kevin Wayne Murphy appeals his conviction for aggravated sexual assault of a child. In three issues, Appellant contends that the trial court erred by admitting testimony relating to two prior extraneous offenses, hearsay testimony of a third extraneous offense, and unreliable expert testimony. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated sexual assault of a child. The victim was Appellant's prepubescent stepdaughter. The State alleged in the indictment that Appellant had penetrated the victim's anus with his sexual organ. Appellant pleaded not guilty and, following a jury trial, the jury found Appellant guilty of the charged offense. The trial court assessed Appellant's punishment at life imprisonment. This appeal followed.

### EXPERT TESTIMONY

In his third issue, Appellant asserts that the trial court erred by failing to exclude the expert

testimony of Cindy Hutchins, Executive Director of the Shelby County Children's Advocacy Center. Appellant claims that the expert testimony of Hutchins, a trained forensic child interviewer and licensed professional counselor, should have been excluded as inherently unreliable. In support of this issue, Appellant cites to evidence that Hutchins was biased because she worked at the direction of the Shelby County District Attorney and because she did not begin counseling the child victim until such counseling was necessary for "court preparation." Appellant also cites to evidence that Hutchins is part of a law enforcement agency (the Shelby County Children's Advocacy Center) and a member of what he calls the "Prosecution Team."

**Standard of Review**

Rule 702 of the Texas Rules of Evidence governs the admission of expert testimony. *See* TEX. R. EVID. 702. An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse of discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). "In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Id.* In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.*

**Discussion**

Appellant does not challenge Hutchins's qualifications as a forensic interviewer or mental health counselor. *See id.* Nor does Appellant challenge the methodology used by Hutchins when reaching her expert opinions. *See id.* Instead, Appellant merely argues that Hutchins's ties to the State demonstrate bias sufficient to render her expert testimony "inherently unreliable."

Standing alone, the argument that an expert has an allegiance to a party is not sufficient to warrant the exclusion of her testimony. *Cf. Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd), *cert. denied*, 128 S. Ct. 2058 (2008) ("Expert testimony by experienced law enforcement officers may also be used to establish an accused's intent to deliver."). Rather than supporting exclusion, arguments of this type are properly asserted on cross examination to attack an expert's credibility. *Cf. Russell v. Young*, 452 S.W.2d 434, 436 (Tex. 1970) (orig. proceeding) ("It is true that[,] in order to show bias and prejudice[,] an expert medical witness may be cross-examined regarding the number of times he has testified in lawsuits, payments for such

2

testifying[,] and related questions."). Appellant made no showing at trial that Hutchins's testimony was unreliable. Therefore, the trial court did not abuse its discretion by permitting Hutchins to give expert testimony. *See Weatherred*, 15 S.W.3d at 542. We overrule Appellant's third issue. *See id.*

### ADMISSION OF HEARSAY EXTRANEOUS OFFENSE TESTIMONY

In his second issue, Appellant contends that the trial court erred by admitting hearsay testimony regarding Appellant's sexual assault of the child victim's younger sister. The testimony complained of was given by Hutchins regarding statements made to her by the victim's sister. The testimony was as follows:

> About three sessions ago when I visited with her. I remember asking her, I said, "Well, are you ready to go see your mom? I was thinking about [how] you might like to see your mom." Yes, she would. I said, "Well, what about your dad?" And, she said, "Well, not my step-dad [Appellant]." And, I said, "How come you don't want to see your step-dad?" Because he's done bad things to me. What kind of bad things? She said he had touched her - -

Appellant objected to this testimony, arguing that it was inadmissible hearsay. The trial court overruled Appellant's objection. We will assume, without deciding, that the trial court erred by admitting the testimony.[1]

The erroneous admission of hearsay evidence is nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Nonconstitutional error that does not affect the substantial rights of the defendant must be disregarded. TEX. R. APP. P. 44.2(b). Therefore, even if the trial court erred in overruling Appellant's hearsay objection, the error would not warrant reversal unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Generally, the improper admission of evidence does not constitute reversible error if the same facts are shown by other unchallenged evidence. *See Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978).

Here, Appellant has not challenged other testimony containing the same facts, but of a significantly more descriptive and incriminating nature. Specifically, Appellant has not challenged

---

[1] We have not considered whether the exception found in Texas Rule of Evidence 803(4) applies. *See* TEX. R. EVID. 803(4).

Hutchins's further description of the "touching" incident, that

> . . . [the sister] said that [Appellant] had put his private in her butt. . . . But, she's insistent that he put his private in her butt. . . . And that she doesn't want to see him [anymore].

Because such vivid testimony specifically setting forth the nature of Appellant's "touching" of the sister has not been challenged, we cannot hold that the trial court committed reversible error by admitting the complained of testimony. *See **Crocker***, 573 S.W.2d at 201. We overrule Appellant's second issue.

### ADMISSION OF ADDITIONAL EXTRANEOUS OFFENSE TESTIMONY

In his first issue, Appellant asserts that the trial court erroneously denied his motions to exclude the testimony of two other victims, M.G. and P.S.A., whom Appellant had previously sexually assaulted. We have assumed, without deciding, that the trial court should not have admitted the testimony in question.

### Standard of Review

The erroneous admission of extraneous offense evidence is nonconstitutional error. *See **King***, 953 S.W.2d at 271. Again, nonconstitutional error that does not affect the substantial rights of the defendant must be disregarded. TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. ***Motilla v. State***, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In conducting the harm analysis, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, any defensive theories, closing arguments, and even voir dire if material to the appellant's claim. ***Motilla***, 78 S.W.3d at 355-56; ***Morales v. State***, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Other factors to be considered are the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. ***Motilla***, 78 S.W.3d at 355; ***Morales***, 32 S.W.3d at 867. Whether the State emphasized the error can also be a factor. ***Motilla***, 78 S.W.3d at 356.

**Discussion**

The State presented numerous witnesses at trial, including the child victim, Hutchins, a Child Protective Services investigator, and a sexual assault nurse examiner. The child victim testified in graphic detail regarding the sexual abuse perpetrated against her by Appellant. Hutchins's testimony included what the child initially told her at her forensic interview. Hutchins's description of the child's allegations was consistent with the child's testimony. Hutchins also testified that, based on her training and experience as a forensic interviewer and counselor, the child's account of the events and her subsequent behaviors were consistent with an incident of sexual abuse. Finally, Hutchins testified that the child's younger sister, K.T., had told her that she too had been sexually assaulted by Appellant.

Shanna Murphy, an investigator for Child Protective Services, testified that evidence found during a search of Appellant's home was consistent with evidence described by the child. Specifically, the State seized a pink bottle of lotion from a night stand in Appellant's bedroom. The child had told investigators where to look for the lotion and had alleged that this lotion was used by Appellant when he engaged in anal sex with her.[2]

Sexual Assault Nurse Examiner Veronica Sjolander testified regarding her interviews and examinations of the child victim and her younger sister. She testified as to allegations made to her by the child victim and her sister, which were consistent with those made by the child in her own testimony and those made by the child and her sister to Hutchins. During her testimony, the State also admitted copies of Sjolander's records regarding her interviews and examinations of the children. Sjolander's testimony and records demonstrated that both children had sustained injuries consistent with sexual abuse, including anal penetration. Finally, the State introduced pictures of the child victim's damaged hymen and scarred anus.

During his case in chief, Appellant introduced favorable testimony from his mother, sister, and wife.[3] Each of these witnesses had an obvious motivation to testify favorably on behalf of Appellant. The testimony elicited from these witnesses supported Appellant's position that he lacked the opportunity to assault the children because of the presence of his unemployed wife in the

---

[2] During her trial testimony, the child also described this lotion and its use by Appellant.

[3] The wife, a mentally handicapped individual who was heavily dependent on Appellant for emotional and financial support, was also the mother of the child victim and her sister.

home. However, his wife admitted that there had been one instance, matching the circumstances described by the child victim, when Appellant had been alone at home with the child. The witnesses collectively provided testimony that the physical injuries sustained by the child to her hymen and anus could have been caused, respectively, by a bicycle accident that occurred close in time to the alleged incident and by multiple infestations of "pin worms" the child had suffered. In addition, their testimony supported the allegation made by Appellant that the child victim had recanted from her allegations of abuse. Finally, Appellant's sister, Braidi Murphy, accused the sexual assault nurse examiner, Sjolander, of fabricating allegations against Appellant. According to Braidi, Sjolander made notations in her records of abuse allegations that were not actually reported to her during her interview or physical examination of the children.

Appellant also testified at trial. He admitted that he had previously been addicted to cocaine and also admitted to instances of improper conduct such as punching his own sister in the face. He denied any improper conduct with the children.

The child victim testified that the bicycle injury did not result in an injury to her female sexual organ. Although she admitted she had contracted pin worms, she asserted that the cause of her anal injury was anal sex with Appellant. Nurse Sjolander's testimony also contradicted the medical theories put forth by Appellant's family members. She provided expert medical testimony that these injuries were consistent with sexual assault and that they had not been caused by the alleged bicycle injury or by any scratching related to pin worms. Sjolander also testified in rebuttal as to the procedure for sexual assault interviews and examinations and that, as a result of those procedures, Braidi was not present during some conversations with the children that Braidi claimed to have witnessed. Sjolander firmly asserted that she did not fabricate the allegations of abuse made to her.

As to the issue of whether the child victim had previously recanted her allegations, Hutchins testified that the child had consistently made the same allegations throughout the process. The State also introduced mental health records from another counselor of the children, Cheryl Wilson. Wilson's notes in these records were consistent with the allegations of abuse made by the child to others and in court. Finally, the State introduced the medical records of Dr. Tom Middlebrook, a psychiatrist who treated the child victim. Middlebrook's records indicated that he was told by Appellant's mother that the child had recanted. However, when Middlebrook was able to interview

6

the child in private, the child told him that Appellant had anally raped her. The child also told him that she was being pressured by her family to recant and that her previous recantation was as a result of this pressure.

The State's evidence, although controverted by interested witnesses, overwhelmingly shows that Appellant sexually assaulted the child victim. The child alleged to multiple disinterested persons that Appellant had sexually assaulted her and she testified at trial. Her allegations were supported by those made by her sister and by her and her sister's physical injuries. Appellant brought no expert testimony to contradict Sjolander's testimony that the injuries to the victim could not have been caused by the bicycle injury or pin worms. Likewise, Appellant brought no expert testimony to contradict the testimony of Hutchins that the child's account of the events and subsequent behaviors were consistent with an incident of sexual abuse. Appellant made multiple attempts to attack the credibility of virtually all unfavorable testimony. However, these attempts were almost exclusively through his own testimony and the testimony of his wife and other members of his family.

The State's theory of the case, as presented to the jury, appears to have evolved over time. By the time that the testimony of M.G. and P.S.A. was admitted, the State's theory appears to have included the proposition that the child victim must have been telling the truth because K.T., M.G., and P.S.A. also claimed Appellant assaulted them. The State tried to make this point during its cross examination of Appellant and during closing arguments.

The jury was given limiting instructions by the trial court at the time of the testimony of M.G. and P.S.A. and in the jury charge. However, these instructions were too general and vague to have mitigated any prejudicial effect. Nonetheless, based upon the foregoing analysis, we conclude that the overwhelming nature of the evidence against Appellant outweighs the prejudice from the admission of the two other extraneous offenses. As such, we have more than a fair assurance that the error did not influence the jury or had but a slight effect on its verdict. Therefore, even though we have assumed error, Appellant has not established the level of harm necessary to require reversal. *See* **Coleman v. State**, 188 S.W.3d 708, 728 (Tex. App.–Tyler 2005, pet. ref'd) ("[T]he overwhelming nature of the evidence against Appellant outweighs the prejudice from the admission of the cocaine."). We overrule Appellant's first issue.

7

## DISPOSITION

We *affirm* the judgment of the trial court.


                                        SAM GRIFFITH
                                            Justice


Opinion delivered August 12, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)


8