

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00774-CR

Melvin Theodore **DUDLEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2020CR10886
Honorable Kristina Escalona, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:          Luz Elena D. Chapa, Justice
                  Irene Rios, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: September 4, 2024

AFFIRMED

A jury convicted Melvin Theodore Dudley of possession with intent to deliver a controlled substance, methamphetamine, four grams or more but less than two hundred grams. After a punishment hearing, the trial court sentenced Dudley to fifteen years' imprisonment and a $2,000.00 fine. In two issues, Dudley argues the evidence is insufficient to support his conviction, and the trial court erred by denying his motion for mistrial. We affirm.

**BACKGROUND**

At trial, the evidence showed that San Antonio Police Department ("SAPD") officer James Schneider, who was a detective investigator assigned to the narcotics unit, was conducting surveillance of a residence in Bexar County, Texas, when he observed Dudley and a woman, Gina Williams, exit the residence and walk to a parked black Lexus sports utility vehicle. Dudley held a black backpack and a rectangular black bag. Dudley entered the vehicle on the driver's side, and Williams entered the vehicle on the passenger's side. Soon after driving away from the residence, Dudley failed to make a complete stop at a stop sign. Dudley was pulled over for the traffic violation by SAPD patrol officer Marco Garza. Officer Garza approached the vehicle and as soon as its windows were rolled down, he smelled the odor of marijuana emanating from inside the vehicle. When Dudley exited the vehicle, Officer Garza smelled the odor of marijuana on Dudley's clothing.

Officer Garza eventually conducted a search of the vehicle.[1] During the search, Officer Garza found a blunt—a cigar containing marijuana instead of tobacco—in the center console cup holder. Additionally, he found the black backpack and the rectangular black bag, which Detective Schneider had seen Dudley holding when he left the residence. The black backpack was on the backseat and the rectangular black bag was on the front passenger floorboard. Inside the backpack was marijuana and a white plastic jar containing two plastic bags. Each of the plastic bags contained numerous multicolored pills. The backpack also contained a scale and a box of plastic sandwich baggies. Inside the rectangular black bag was a red bank bag containing $11,000.00 in cash.

---

[1]The lawfulness of the search is not challenged on appeal.

After the search, Dudley told another SAPD officer at the scene, Timothy Henry, that he had obtained the marijuana and the pills in the backpack from "a kid at a barbershop," but he refused to say anything else about the person who had provided him the drugs. In another conversation with Detective Schneider, Dudley "claim[ed] ownership of all the narcotics in the bag."

The pills were sent to the laboratory, where a forensic examiner, Yvette Holt Pirkle, tested them. Examiner Pirkle's drug identification report, which was admitted into evidence, showed one thousand six pills and numerous pill pieces were found in the backpack. Examiner Pirkle testified the multicolored pills had six different types of imprints on them. She tested one pill bearing each type of imprint. All six pills tested positive for methamphetamine.

Detective Schneider testified that the total field weight of the pills found in the backpack was 197 grams.

Based on this evidence, the jury found Dudley guilty of the offense of possession with intent to deliver a controlled substance, methamphetamine, four grams or more but less than two hundred grams.

### SUFFICIENCY OF THE EVIDENCE

When asked to review the sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict. *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the case was proven by direct or circumstantial evidence. *Id*. We must defer to the jury's findings and determine whether a rational trier of fact could have found the challenged elements of the offense beyond a reasonable doubt. *Id*. The jury is responsible for judging the credibility of witnesses and may find credible all, some, or none of the testimony provided by them. *Id*.

The elements of possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance in the amount alleged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. TEX. HEALTH & SAFETY CODE § 481.112(a); *Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd). "'Possession' means actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE § 481.002(38). In this case, Dudley argues that a rational jury could not have found beyond a reasonable doubt that he (1) possessed a controlled substance and (2) intended to deliver the controlled substance to another.

**Possession of a Controlled Substance**

Dudley argues the evidence is insufficient to support a finding that he possessed a controlled substance because he "was not in the exclusive possession of the place where the alleged controlled substance was found." Dudley points out that he was not alone in the vehicle; that his sole passenger, Williams, was the registered owner of the vehicle; and that the money was not found in the backpack with the pills but in the rectangular black bag on the front passenger floorboard.

"When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate v. State*, 500 S.W.3d 410, 413-14 (Tex. Crim. App. 2016); *Hargrove v. State*, 211 S.W.3d 379, 385 (Tex. App.—San Antonio 2006, pet. ref'd). The Texas Court of Criminal Appeals has recognized a non-exhaustive list of fourteen factors that may indicate a link connecting the defendant to the knowing possession of contraband: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether

the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Tate*, 500 S.W.3d at 414; *Hargrove*, 211 S.W.3d at 385-86. "A link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Espino-Cruz v. State*, 586 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (internal citation omitted).

Here, several facts and circumstances linked Dudley to the methamphetamine, including Dudley's proximity to and accessibility to the methamphetamine, the odor of marijuana emanating from the vehicle and Dudley's clothing, the presence of other narcotics, and the incriminating statements Dudley made to the officers. Detective Schneider testified that before the traffic stop, he had seen Dudley holding the backpack and the rectangular black bag. The backpack contained several documents belonging to Dudley—a check made out to Dudley, mail sent to Dudley, and a bill addressed to Dudley. *See Hargrove*, 211 S.W.3d at 386 (noting that a recent utility bill addressed to the defendant at the address where the contraband was found served as a link). Inside a cupholder in the center console within Dudley's reach while he was driving was a blunt, which contained marijuana. The backpack also contained marijuana, a digital scale, and a box of sandwich baggies. Detective Schneider testified that drug dealers typically use scales "to measure narcotic weights" and sandwich baggies to "put [drugs] into smaller bags for resale." Furthermore, inside the rectangular black bag was a red bank bag containing $11,000.00 in cash, which is a large

amount of money. Finally, Dudley claimed ownership of the drugs in a conversation with Detective Schneider. Based on the combined and cumulative force of this evidence and the reasonable inferences drawn therefrom, we conclude the jury was justified in finding Dudley knew of the existence of the methamphetamine and exercised control over it. Considering the evidence in the light most favorable to the verdict, a rational jury could have found the possession element of the offense beyond a reasonable doubt. *See Tate*, 500 S.W.3d at 417-18; *Espino-Cruz*, 586 S.W.3d 545-46; *Hargrove*, 211 S.W.3d at 386-87.

**Intent to Deliver**

Intent to deliver contraband may be proved by circumstantial evidence, including evidence that the accused possessed the contraband and the quantity of the drugs possessed. *Espino-Cruz*, 586 S.W.3d at 546; *Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Intent to deliver can be inferred from the acts, words, and conduct of the defendant. *Espino-Cruz*, 586 S.W.3d at 546; *Utomi*, 243 S.W.3d at 82. Factors that courts consider in determining intent to deliver include (1) the nature of the location at which the defendant was arrested, (2) the quantity of the contraband in the defendant's possession, (3) the manner of the packaging of the contraband, (4) the presence of or lack of narcotics paraphernalia for either use or sale, (5) large amounts of cash, and (6) the defendant's status as a narcotics user. *Espino-Cruz*, 586 S.W.3d at 546; *Utomi*, 243 S.W.3d at 82. Expert testimony from an experienced law enforcement officer may be used to establish a defendant's intent to deliver. *Utomi*, 243 S.W.3d at 82-83.

Here, Detective Schneider testified that the methamphetamine found in the backpack weighed 197 grams, which far exceeded a personal use amount. Based on his training and experience, Detective Schneider opined that a "usable amount" of methamphetamine for an individual "might be a half gram or gram." He added that someone may have "three, four, or five pills" "for personal use over a week," "[b]ut when someone has a larger amount . . . that's more

than someone would consume over . . . a period of time." He estimated that the methamphetamine found in the backpack comprised about 985 "usable units," which meant it had the potential to reach 985 individuals. Detective Schneider further testified that individuals selling narcotics typically have scales, small baggies, and money with them, all of which were found in the backpack and the black bag in this case. Finally, Garza testified that, in his training and experience, an individual possessing a controlled substance in an amount for personal use does not typically have a scale and baggies with them. Considering the evidence in the light most favorable to the verdict, a rational jury could have found the intent to deliver element of the offense beyond a reasonable doubt. *See Espino-Cruz*, 586 S.W.3d at 546-47; *Utomi*, 243 S.W.3d at 83.

### DENIAL OF MOTION FOR MISTRIAL

In his second issue, Dudley argues the trial court erred by denying his motion for mistrial in connection with the failure to seat venire member 23.

A criminal defendant is entitled to a trial by a fair and impartial jury. *See* U.S. CONST. amend. VI, XIV; TEX. CONST. art. I, §§ 10, 15. However, "the constitutional right to trial by an impartial jury is not violated by every error in the selection of a jury." *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998) (explaining that exclusion of a juror because of general opposition to the death penalty amounts to a constitutional violation, and that exclusion of jurors for impermissible reasons like race, sex, or ethnicity may violate constitutional provisions). "Procedurally, the first twelve names on the jury list that have not been struck by the parties constitute the jury." *Chaves v. State*, 630 S.W.3d 541, 548 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing TEX. CODE CRIM. PROC. art. 35.26).[2] "[A] defendant has no right that any particular

---

[2]Article 35.26(a) states:

> When the parties have made or declined to make their peremptory challenges, they shall deliver their lists to the clerk. Except as provided in Subsection (b) of this section, the clerk shall, if the case

individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified." *Colone v. State*, 573 S.W.3d 249, 261 (Tex. Crim. App. 2019) (quoting *Jones*, 982 S.W.2d at 393).

Here, at the end of the first day of trial, the trial court informed the State and defense counsel that the trial court clerk, who was tasked with reconciling each sides' peremptory strikes and compiling the jury list, had inadvertently skipped over venire member 23, who was not struck by either side. The omission caused venire member 38 to be seated on the jury. The trial court pointed out that venire member 38 was in the "strike zone," meaning that both sides had sufficient peremptory strikes to have struck her if they had so desired. However, neither side opted to strike venire member 38. After the trial court explained the omission, Dudley moved for a mistrial stating, "I cannot be sure that the juror that we should have had would not have been more beneficial to our case than the juror we ended up with." The trial court denied the motion for mistrial.

In his brief, Dudley argues the trial court erred in denying his motion for mistrial because the error in seating the jury denied him of his right to a fair and impartial trial by his peers in violation of the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 10 of the Texas Constitution. However, Dudley does not support his appellate argument with analysis or cite any cases applying these constitutional provisions. We therefore conclude he has improperly briefed this issue and waived any error. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with

---

be in the district court, call off the first twelve names on the lists that have not been stricken. If the case be in the county court, he shall call off the first six names on the lists that have not been stricken. Those whose names are called shall be the jury.

TEX. CODE CRIM. PROC. art. 35.26(a).

appropriate citations to authorities"); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (holding appellant waived issue on appeal because he inadequately briefed the issue by failing to address whether the alleged error was harmless and because the authorities he cited did not support his issue).

But even if Dudley had adequately briefed this issue on appeal, we would have overruled it. "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id*. We review the trial court's denial of a mistrial for an abuse of discretion and will uphold the ruling if it falls within the zone of reasonable disagreement. *Id*.

When confronted with a similar situation, the First Court of Appeals held the trial court did not abuse its discretion in denying the defendant's motion for mistrial. *Chaves*, 630 S.W.3d at 552. In *Chaves*, the trial court clerk responsible for reviewing the State's and the defendant's strike lists and compiling the jury list overlooked venire member 39, who had not been struck by either side. *Id*. at 549. The omission was noticed after the trial court had already excused the unselected members of the venire but before the jury was sworn. *Id*. The defendant moved for a mistrial, which the trial court denied. *Id*. On appeal, the defendant challenged the denial of the mistrial, claiming the trial court erred because "a non-stricken venire member [was] not properly seated on the jury in violation of Texas Code of Criminal Procedure article 35.26(a)." *Id*. at 547. The court of appeals disagreed, holding there was no violation of the spirit and intent of article 35.26(a). *Id*. at 551. Additionally, the court of appeals held that even if an error had occurred, the defendant failed to demonstrate that he was harmed by it. *Id*. at 551-52.

In the present case, we see nothing indicating a constitutional violation. And, like the court in *Chaves*, we see no violation of the spirit and intent of article 35.26(a). *See id*. at 551. But even if an error occurred, our harm standard requires us to disregard non-constitutional errors that do not affect a defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Dudley has not demonstrated that he was harmed by venire member 23 being inadvertently omitted from the jury. *See id*. Plus, when Dudley did not strike venire member 38, he knew she might be placed on the jury. *See Chaves*, 630 S.W.3d at 551. We hold the trial court did not abuse its discretion in denying Dudley's motion for mistrial.

## CONCLUSION

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice

DO NOT PUBLISH