Opinion issued January 14, 2010 




 


 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00862-CR

NO. 01-08-00863-CR

____________


BYRON JERMAINE PROPHET, Appellant


v.


THE STATE OF TEXAS, Appellee






On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause Nos. 1155796 & 1155797







MEMORANDUM OPINION

 Appellant, Byron Jermaine Prophet, was charged by indictment with possession
of more than one gram and less than four grams of phencyclidine (PCP). See Act of
May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586, 3706-07
(amended 2009) (current version at Tex. Health & Safety Code Ann. § 481.115
(a) & (c) (Vernon Supp. 2009)). (1) Appellant was also charged by indictment with
possession with the intent to deliver more than four grams but less than two hundred
grams of cocaine. See Act of May 22, 2001, 77th Leg., R.S., ch. 1188, § 2, 2001 Tex.
Gen. Laws 2691 (amended 2009) (current version at Tex. Health & Safety Code
Ann. § 481.112 (a) & (d) (Vernon Supp. 2009)). (2) The indictment for possession with
the intent to deliver cocaine also alleged that appellant used a handgun during the
commission of the offense. The two causes were tried together. A jury convicted
appellant of possession of PCP and possession with the intent to deliver cocaine. 
However, the jury found the special issue alleging the use of deadly weapon not true. 
The jury assessed punishment at two years in prison for the possession of PCP
conviction and sixteen years in prison for the possession with intent to deliver
cocaine conviction. On appeal, appellant argues that the evidence was legally and
factually insufficient to support his convictions. We affirm.

Background


 On February 26, 2008, Officer Goines, a Houston Police Department (HPD)
undercover officer in the Narcotics Division, obtained a search warrant for the
residence located at 5603 Elmlawn. The next day, Officer Goines conducted visual
surveillance of the property for approximately thirty minutes from a pickup truck
parked across the street. Officer Goines observed a small-framed black man
approximately forty-five years old in the front yard of the residence with a pit bull
dog. Several minutes later, appellant arrived in a white Buick sedan. Officer Goines
observed appellant enter the garage and use a key to unlock the burglar bars covering
the door that led from the garage into the residence. Officer Goines saw appellant
enter the residence. After about five minutes, appellant exited through the same door
in the garage, locking the burglar bars behind him. Officer Goines testified that
appellant walked out of the garage into the driveway and was about to leave but, then,
stopped to converse with another man who had just arrived in front of the residence. 
The second man started looking under the hood of the white car, and appellant went
back into the house a second time. Again, appellant entered through the garage and
unlocked the burglar bars covering the door. Appellant was inside the house for
approximately eight minutes, and then, he exited the residence through the garage
door. Officer Goines did not observe him lock the burglar bars as he left the house
this second time. Appellant got a chair and sat "right at the edge of the garage." 
Officer Goines testified that he never saw anyone but appellant enter the house while
he was conducting surveillance.

 Later, a woman walked over to the house from across the street and started
talking with the men. Officer Goines believed that the woman saw him watching the
residence and was warning the men of his presence. Based on that belief, Officer
Goines decided to gather his raid team and execute the warrant. A raid team of
approximately six officers was waiting in a van several blocks away. Officer Goines
drove his truck to the team's location and joined the other officers in the van. Officer
Goines testified that it was probably three or four minutes from the time he
discontinued surveillance until he returned in the van with the raid team.

 When the raid team approached, appellant got up from where he was sitting and
ran into the garage towards the door leading into the house. He was ordered to lie on
the ground and complied. The small-framed black man, Darrell Prophet, ran around
the side of the house towards the rear of the house where he was caught. The man
who was working on the car, Gary Pugh, froze, and he was ordered to lie on the
ground. The woman, Virgil, ran into the garage and was found hiding in the garage
closet.

 The raid team entered the house through the door inside the garage that Officer
Goines had observed appellant use. First, officers "cleared" the house and found
nobody inside. The door from the garage led into the kitchen and den area. The den
opened up to the kitchen, separated only by the kitchen counter. In plain view on the
kitchen counter, the officers found a plastic bag containing five crack cocaine
cookies, a black tray with loose rocks of crack cocaine, a vanilla extract bottle
containing 1.06 grams of PCP, a small bag of marijuana, a black briefcase that
contained a large sum of cash, a scale, a knife, and appellant's Texas driver's license. 
Officer Goines testified that appellant's license was found on the counter right next
to the contraband. The currency in the briefcase was in small denominations of ones,
tens, and twenties. 

 Officer Goines had been a member of the HPD Narcotics Division for twenty-four years. Based on this experience, Officer Goines explained for the jury the
meaning of the drug terminology he used and significance of what was found. He
explained that a "cookie" is made from twenty-eight grams (one ounce) of cocaine
in a powder form that has been converted into crack cocaine. It is referred to as a
"cookie" because it looks like a big, thick vanilla cookie. The cookie can be broken
into smaller pieces, referred to as crack cocaine "rocks." A "rock" weighs from 0.2
to 0.4 grams and is the size used for personal consumption. Officer Goines said that
a gram of crack cocaine has a street value of about $100. The cookie (twenty-eight
grams of crack cocaine) is usually sold wholesale for about $600 to street dealers who
break up the cookie into rocks to sell individually. Officer Goines estimated that a
dealer would make around $2800 from the rocks from one cookie. 

 Officer Goines explained that PCP is normally sold in two-gram bottles for a
value of around $350. PCP is in a liquid form, has a distinct odor, and is normally
carried in vanilla extract bottles on the street. PCP is usually used as a "lace,"
meaning that cigarettes or marijuana are dipped in the liquid PCP.

 A total of 131.5 grams of cocaine and 1.06 grams of PCP was found at the
house. Officer Goines testified that 131.5 grams of cocaine has a street value of
around $13,000. Officer Goines, as well as other narcotics officers who were part of
the raid team, testified that the amount of cocaine was consistent with the sale of
narcotics, and he opined that it was not possessed for personal use. 

 The raid team found two loaded firearms in the den: a shotgun and a rifle. 
Officer Goines testified that it was common to find a drug dealer in possession of a
handgun but not rifles and shotguns. The types of firearms found were significant
because, as compared with handguns, they have wider range and the ability to
penetrate through police vests. Officer Goines testified that the type of firearms
found "are the ones that will kill police officers."

 Officer Goines opined that this house was used as a "dope house," primarily
for the purpose of selling and storing narcotics. The numbers indicating the street
address had been removed from the front of the house. Officer Goines testified that
removing the numbers was a common practice among drug dealers because it
prevents the neighbors from knowing the correct address to report activity, and it
prevents the police from finding the correct location. The front door of the house,
also covered in burglar bars, led into a living room. Two pit bull dogs were inside the
living room. There was an interior door leading from the living room into the
den/kitchen area, which was also covered with burglar bars. Officer Goines opined
that the interior burglar bars were significant because they provided another level of
protection. Officer Goines testified that police officers normally make entrance to a
house through the front door. If the front door at this location were used, officers
would have to make entry through the burglar bars on the front door, get past the two
pit bulls in the living room, and remove the burglar bars in the living room leading
into the kitchen/den area, which would allow time for a person inside the kitchen to
flee or to destroy the narcotics.

 The house was sparsely furnished, very dirty, and in a state of disarray. Some
of the rooms were covered in dog feces, and Officer Salter described the terrible
stench. Officers found no food, clothing, or personal items (other than appellant's
driver's license) in the house. Officer Goines and two other narcotics officers who
were part of the raid team opined that no one lived in the house and that it was strictly
used to store and sell narcotics.

 Officers found keys fitting the burglar bars in appellant's front pants pocket. 
Appellant was also the only person Officer Goines observed entering the house. No
one else at the scene had keys to the house.

 Officer Goines testified that when someone is taken into custody it is standard
police procedure to tow the person's vehicle and to board up the person's residence
to secure his property. When Officer Goines advised appellant of this procedure,
appellant asked that the officers instead leave the vehicle and the residence in the
control of Darrell Prophet.

 Appellant testified that he did not arrive at the residence in the white Buick but,
rather, rode his dirt bike. He testified that he went to the house looking for his uncle,
Darrell Prophet, to fix his dirt bike. Appellant said that when he arrived at the house
his uncle was working on the white Buick in the driveway. Appellant stated that
Louis and Gary Pugh were present at the house when he arrived, and he believed that
the house at 5603 Elmlawn was Louis's house. 

 Appellant testified that he did not go into the house that day and had never
been in the house. On the day in question, he entered the garage twice to retrieve
tools. Appellant said that when he was searched, nothing was found in his pockets. 
Specifically, the keys to the house were not found in his pocket. Appellant testified
that the identification card found inside the house was left at his grandmother's
house. He could not explain how it got into the house at 5603 Elmlawn. He had
never seen the white car before that day and had never driven it. He never asked
Officer Goines to leave the vehicle and house in Darrell Prophet's control. Louis
Pugh and Gary Pugh were friends with his uncle, and he did not hang out or go
anywhere with either of them.

 Appellant admitted that he had two prior convictions for possession of less than
one gram of cocaine, a conviction for possession of marijuana, and a conviction for
burglary of a building.

 In rebuttal, the State called Officer Barbara Gastmyer, who had twenty-seven
years experience with the Houston Police Department. Officer Gastmyer testified that
on June 29, 2007, eight months prior to the offense in question, she stopped appellant
for a traffic violation. Appellant was driving the same white Buick sedan that Officer
Goines observed him arrive in at 5603 Elmlawn. Officer Gastmyer said that Louis
Pugh was a passenger in the vehicle at the time of the stop. When she asked appellant
about the ownership of the vehicle, he said that his mother had bought the vehicle and
the title was being changed over to appellant's name. Officer Gastmyer found
cocaine in the trunk of the car, and appellant was charged with possession of a
controlled substance. At the time of the stop, Louis Pugh had in his possession a
crack pipe that tested positive for crack cocaine.

Analysis

 Appellant contends that the evidence presented at trial is legally and factually
insufficient to prove that he possessed PCP, that he possessed cocaine, and that he
intended to deliver the cocaine. 

 A. Standard of Review

 In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime's essential elements beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319 (1979); Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). 
The standard is the same for both direct and circumstantial evidence cases. King v.
State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). In a legal sufficiency challenge,
we do not re-weigh the evidence. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000). We do not resolve any conflict of fact, weigh any evidence, or evaluate the
credibility of any witnesses, as this was the function of the trier of fact. See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

 In our factual-sufficiency review, we view all of the evidence in a neutral light. 
Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will set aside the
verdict only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the proof of guilt is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we also cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury's resolution of that conflict. Id. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
our factual-sufficiency review, we must also discuss the evidence that, according to
appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

 B. Unlawful Possession of a Controlled Substance

 A person commits an offense if he knowingly or intentionally possesses a
controlled substance. See Tex. Health & Safety Code Ann. §§ 481.112, 481.115. 
When an accused is charged with unlawful possession of drugs, the State must prove
(1) the defendant exercised actual care, custody, control, or management over the
contraband and (2) the accused knew the object he possessed was contraband. 
Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The law does not
require exclusive possession of the drug. Roberson v. State, 80 S.W.3d 730, 735(Tex.
App.--Houston [1st Dist.] 2002, pet. ref'd) (citing Harvey v. State, 487 S.W.2d 75,
77 (Tex. Crim. App. 1972)). "The mere fact that a person other than the accused
might have joint possession of the premises does not require the State to prove that
the defendant had sole possession of the contraband, only that there are affirmative
links between the defendant and the drugs such that he, too, knew of the drugs and
constructively possessed them." Poindexter, 153 S.W.3d at 412 (emphasis in
original). 

 "When the accused is not in exclusive possession of the place where the
substance is found, it cannot be concluded that he had knowledge of and control over
the contraband unless there are additional independent facts and circumstances which
affirmatively link him to the contraband." Poindexter, 153 S.W.3d at 406. Evidence
that affirmatively links an accused to the substance is proof that he possessed it
knowingly. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). 
Affirmative links may be shown by direct or circumstantial evidence, but in either
case it must establish to the requisite level of confidence that the accused's
connection with the drug was more than just fortuitous. Poindexter, 153 S.W.3d at
405-06 (citing Brown, 911 S.W.2d at 747). As explained in Poindexter, "The
'affirmative links rule' is designed to protect the innocent bystander from conviction
based solely upon his fortuitous proximity to someone else's drugs." Id. at 406. 

 "Mere presence at the location where drugs are found is thus insufficient, by
itself, to establish actual care, custody, or control of those drugs." Evans v. State, 202
S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when
combined with other evidence or "links", may well be sufficient to establish that
element beyond a reasonable doubt. Id. It is not the number of links that is
dispositive, but rather the logical force of all of the evidence. Id. The following non-exclusive "affirmative links" have been recognized as sufficient, either singly or in
combination, to establish a person's connection to contraband: 

(1) the defendant's presence when a search is conducted; (2) whether the
contraband was in plain view; (3) the defendant's proximity to and the
accessibility of the narcotic; (4) whether the defendant was under the
influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive
gestures; (9) whether there was an odor of contraband; (10) whether
other contraband or drug paraphernalia were present; (11) whether the
defendant owned or had the right to possess the place where the drugs
were found; (12) whether the place where the drugs were found was
enclosed; (13) whether the defendant was found with a large amount of
cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt.


Id. at 162 n.12.


 Legal Sufficiency

 Appellant contends that the evidence is legally insufficient to show that he
knowingly possessed PCP and cocaine. Specifically, appellant argues that the
evidence is insufficient to show the requisite link between appellant and the
contraband to establish actual care, custody, or control of those drugs. (3)

 Appellant was the only person Officer Goines observed entering the residence. 
Officer Goines testified that appellant entered the house twice through door from the
garage. Both times, Officer Goines observed appellant unlock the burglar bars
covering the door. Appellant was found in possession of a key that unlocked the
burglar bars. No other persons were observed entering the house or were found in
possession of keys to the house. Officer Goines testified that appellant was inside the
house for approximately five minutes the first time and eight minutes the second time.
The door that appellant was observed using entered into the kitchen/den area of the
house. The PCP and cocaine was found on the kitchen counter in plain view. The
only piece of personal property found in the house was appellant's identification card,
which was found on the kitchen counter next to the cocaine, PCP, and brief case
holding money. Also in plain view on the kitchen counter, the officers found
marijuana and a scale probably used for measuring drugs. When informed that his
vehicle would be towed to secure his property while he was in custody, appellant
instructed officers to leave the vehicle and the residence in the control of Darrell
Prophet. 

 Several of the non-exhaustive factors mentioned in Evans are present in this
case. See Evans, 202 S.W.3d at 162. The facts tending to connect appellant with the
PCP and cocaine include: (1) appellant was present at the house when the search was
conducted; (2) the contraband was in plain view; (3) appellant attempted to flee when
the raid team arrived; (4) other contraband and drug paraphernalia was present on the
kitchen counter where the PCP and cocaine were found; (5) appellant was the only
person observed entering the house, was the only person found with a key to the
house, and told officers to give possession of the house to Darrell Prophet, indicating
that appellant had a right to possess the place where the drugs were found; (6) the
place where the drugs were found was enclosed and secured by burglar bars; and (7)
a large amount of cash was found with the contraband in plain view.

 In support of his legal insufficiency argument, appellant points to evidence that
was not present in this case. Although some of the Evans factors are not present, it
is well established that the absence of certain links does not weigh against those that
are present. See Evans, 202 S.W.3d at 162; Robinson v. State, 174 S.W.3d 320, 326
(Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). 

 Additionally, appellant argues that the present case is similar to Allen v. State. 
249 S.W.3d 680 (Tex. App.--Austin 2008, no pet.). In Allen, the court found that
evidence was legally insufficient to support the appellant's conviction for possession
where there was no evidence indicating that the appellant lived at the apartment
where cocaine was found, no cocaine was found on the appellant's person, the
appellant did not try to flee from the premises or attempt to hide any items when
officers entered, the appellant was cooperative with the police and made no
incriminating statements, and most of the cocaine was discovered in a plastic bag
within a closed dog food bag in the dining room. See id. Allen was seated on a
couch in the living room with two small children when officers entered and stated that
she was at the apartment babysitting for the person who resided in the apartment. See
id. 

 Allen is distinguishable from the present case. Unlike Allen, where most of the
contraband was found inside closed cabinets and buried inside a dog food bag, here,
the contraband was found in plain view in an area of the house that appellant was
observed entering. Also, the fact that appellant did not reside at 5603 Elmlawn does
not have the same significance as in Allen because, here, no one resided at the house
and appellant was the only person present with keys to the house.

 Appellant misstates the record when he argues that his fingerprints were not
present on the kitchen cabinets in the area where the police officers found the
contraband. The record shows that officers did not collect fingerprints. Unlike Allen,
where the contraband was found inside cabinets, the contraband here was on the
kitchen counter in plain view. Thus, it was unnecessary for investigators to collect
fingerprint evidence from cabinets to show that appellant was aware of the drugs. 

 Viewing the evidence in the light most favorable to the jury's verdict, we
conclude that the jury could have reasonably inferred from the cumulative force of
the evidence that appellant exercised actual care, custody, or control of the
contraband. See Evans, 202 S.W.3d at 166 (concluding that evidence, "when viewed
in combination and its sum total, constituted amply sufficient evidence"). We
conclude that the evidence is sufficient for a rational trier of fact to have found the
elements of possession of PCP and cocaine beyond a reasonable doubt. See Tex.
Health & Safety Code Ann. §§ 481.112, 481.115. 

 We overrule appellant's first and second issues.


 Factual Sufficiency

 In his fourth and fifth issues, appellant contends that the evidence is factually
insufficient to show that he knowingly possessed PCP and cocaine. In support of his
factual insufficiency argument, appellant points to his own testimony contradicting
the testimony of the officers. However, the fact that appellant gave conflicting
testimony does not make the testimony of the officers factually insufficient because
the fact-finder alone determines the weight to be given contradictory testimonial
evidence. See Cain, 958 S.W.2d at 408-09. "In deciding whether the evidence is
sufficient to link the defendant to contraband, the trier of fact is the exclusive judge
of the credibility of the witnesses and the weight to be given to their testimony." 
Poindexter, 153 S.W.3d at 406. Here, the fact-finder was able to make a
discriminating assessment of the facts, and it found that the State proved appellant's
possession of cocaine beyond a reasonable doubt.

 Additionally, appellant points out links which were not present. As discussed
above, the absence of certain links does not weigh against those that are present. See
Evans, 202 S.W.3d at 162; Robinson v. State, 174 S.W.3d 320, 326 (Tex.
App.--Houston [1st Dist.] 2005, pet. ref'd). 

 When viewed in a neutral light, the evidence shows that (1) appellant was
present at the house when the search was conducted; (2) the contraband was in plain
view; (3) appellant attempted to flee when the raid team arrived; (4) other contraband
and drug paraphernalia was present on the kitchen counter where the PCP and
cocaine were found; (5) appellant was the only person observed entering the house,
was the only person found with a key to the house, and told officers to give
possession of the house to Darrell Prophet, indicating that appellant had a right to
possess the place where the drugs were found; (6) the place where the drugs were
found was enclosed and secured by burglar bars; and (7) a large amount of cash and
appellant's identification card were found with the contraband in plain view. The
evidence, when viewed in combination and its sum total, is sufficient to connect
appellant to the actual care, custody, control or management of the PCP and cocaine
found in house. See Evans, 202 S.W.3d at 166. Weighed in a neutral light, the
evidence is not so weak that the verdict is clearly wrong and unjust. Laster v. State,
275 S.W.3d 512, 518 (Tex. Crim. App. 2009). Also, there is no objective basis in the
record to conclude that the great weight and preponderance of the evidence
contradicts the jury's verdict. Watson, 204 S.W.3d at 417. We hold the evidence is
factually sufficient to support the conviction for possession of PCP and cocaine. See
Tex. Health & Safety Code Ann. § 481.115. 

 We overrule appellant's forth and fifth issues.

 C. Intent to Deliver a Controlled Substance

 In his third and sixth issues, appellant argues that the evidence is legally and
factually insufficient to prove that he intended to deliver the cocaine. While he lists
these issues, appellant provides no argument regarding the evidence showing intent
to deliver.

 To prove the offense of possession with the intent to deliver, the State must
show, in addition to possession, that the accused intended to "transfer, actually or
constructively, to another a controlled substance . . . ." Tex. Health & Safety Code
Ann. §§ 481.002(8), 481.112(a) (Vernon Supp. 2009). Intent to deliver a controlled
substance can be proved by circumstantial evidence, including evidence regarding an
accused's possession of the contraband. Utomi v. State, 243 S.W.3d 75, 82 (Tex.
App.--Houston [1st Dist.] 2007, pet. ref'd). An oral expression of intent is not
required. Id. Additional factors that courts have considered in determining whether
the accused had the intent to deliver include (1) the nature of the location at which the
accused was arrested; (2) the quantity of contraband in the accused's possession; (3)
the manner of packaging; (4) the presence, or lack thereof, of drug paraphernalia for
either use or sale; (5) the accused's possession of large amounts of cash; and (6) the
accused's status as a drug user. Id. (citing Williams v. State, 902 S.W.2d 505, 507
(Tex. App.--Houston [1st Dist.] 1994, pet. ref'd)). Additionally, expert testimony
by experienced law enforcement officers may be used to establish an accused's intent
to deliver. Id. at 82-83 (relying on police officer's testimony that police confiscated
approximately 35 grams of crack cocaine, valued at approximately $3,500, which was
not an amount consistent with personal consumption); Mack v. State, 859 S.W.2d
526, 529 (Tex. App.--Houston [1st Dist.] 1993, no pet.) (relying, in part, on police
officer's testimony "that circumstances logically indicated appellant's intent to deal,
rather than use, the crack cocaine he possessed").

 Legal Sufficiency

 Here, appellant was arrested at a residence that experienced police officers
opined was a "dope house." Officers testified that it was common for drug dealers
to sell and store drugs at a location other than their own residences. They testified
that the address numbers were taken off the house and the doors to the areas where
drugs were kept were covered in burglar bars and protected by pit bull dogs, practices
common among drug dealers. Officers confiscated 131.5 grams of cocaine in the
form of five cookies with a street value of around $13,000. Officers testified that
crack cocaine is normally consumed in smaller pieces called "rocks," weighing
around 0.2 to 0.4 grams. A dealer normally buys the crack cocaine wholesale in the
form of a 28 gram cookie, and breaks the cookie into small pieces to sell individually. 
Officer Goines testified that consumption of anything over a gram of crack cocaine
would cause a person to overdose and possibly die and that consumption of 131
grams would definitely cause death. He testified that five cookies of crack cocaine,
a scale, weapons, and a large briefcase full of money was consistent with the sale of
narcotics.

 Viewing the foregoing evidence in the light most favorable to the verdict, we
conclude that a jury could have found beyond a reasonable doubt that appellant
intended to deliver the crack cocaine. See Evans, 202 S.W.3d at 161.

 We overrule appellant's third issue.

 Factual Sufficiency

 In his brief, appellant lists factual insufficiency of the evidence to prove intent
to deliver, but he provides no argument regarding that element. All of appellant's
argument is directed at the sufficiency of the evidence of knowing possession.

 As addressed above, the only evidence that undermines the verdict is
appellant's denial that he possessed the cocaine. The jury, however, was free to
disbelieve appellant's testimony, and we may not disturb the jury's credibility
determination on appeal. See Cain, 958 S.W.2d at 408-09.

 Thus, after neutrally examining all the evidence, we find that the proof of
appellant's intent to deliver was not so weak that the verdict is clearly wrong or
manifestly unjust; nor is the verdict against the great weight and preponderance of the
evidence. See Johnson, 23 S.W.3d at 10-11.

 We overrule appellant's sixth issue. 





Conclusion

 We affirm the judgment of the trial court.

 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Keyes, Alcala and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b). 
1. The 81st Texas Legislature amended Texas Health & Safety Code Section 481.115, effective
September 1, 2009. The amendments do not affect the disposition of this case. 
2. The 81st Texas Legislature amended Texas Health & Safety Code Section 481.112, effective
September 1, 2009. The amendments do not affect the disposition of this case.
3. Appellant does not dispute the weight of the contraband found or the determination that the
substances found were controlled substances.