TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00072-CR






Derrick Sorrells, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT

NO. D-1-DC-07-204188, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury found Derrick Sorrells guilty of the first-degree felony of possession of a
controlled substance, cocaine, with intent to deliver. See Tex. Health & Safety Code Ann.
§ 481.112(d) (West Supp. 2009). The State alleged two prior convictions for possession of a
controlled substance. The trial court found one of the enhancement allegations "true" and assessed
Sorrells's punishment at twenty years' imprisonment. In three issues, Sorrells contends that: (1) the
evidence is legally and factually insufficient to support his conviction, and (2) his trial counsel
provided ineffective assistance. Because we conclude that the evidence is legally and factually
sufficient to support Sorrells's conviction and that Sorrells has failed to carry his burden of proving
that his trial counsel provided ineffective assistance, we affirm the trial court's judgment.





BACKGROUND

 On July 18, 2007, several police officers in the intelligence unit of the Austin police
department began surveilling a house in Austin based on information they received that Sorrells
might be at the house. The officers were searching for Sorrells because they had a warrant for his
arrest. At some point, some of the officers began looking for Sorrells on adjacent streets and spotted
him at a nearby house. As a result, all of the officers moved and set up surveillance at the second
house. One of the officers, Luis Cadena, was using binoculars to view the activity around the house
when he saw Sorrells appear near a Nissan Xterra that was parked on the property. Cadena noticed
two other individuals also appear near the car. Cadena testified that Sorrells approached the car
carrying a blue and white ice chest. According to Cadena, Sorrells opened the cargo door in the back
of the car, placed the cooler inside, and shut the door. Sorrells then walked around to the rear right
passenger door of the car, opened the door, and got inside. Meanwhile, the other men Cadena had
observed with Sorrells also climbed into the car. The men then left in the car.

 Patrol officers who had been coordinating with the intelligence officers conducted
a traffic stop of the car. One of the patrol officers who made the traffic stop, Steven Beasley,
recorded the stop with a video recorder in his patrol car. In the video and in testimony at trial,
Beasley stated that as officers pulled the car over, he saw one of the two backseat passengers reach
over the back of the seat, lift up the lid of the ice chest, and reach into the ice chest. Beasley could
not see whether it was the man in the left rear seat or the right rear seat who reached into the ice
chest, but he stated in the video and at trial that he was certain that Sorrells was the man seated in
the right rear seat because he had directed Sorrells out of the car and handcuffed him.

 Cadena arrived at the car about ten seconds after the initial stop. He testified that the
driver immediately got out of the car and surrendered. Three passengers remained in the car. 
Officers began directing each of the passengers out, one at a time. Officers found a vanilla extract
bottle filled with liquid and a bag containing a green leafy substance in plain view on the left rear
floorboard of the car. The green leafy substance was later determined to be marijuana, and the liquid
in the bottle was found to be phencyclidine (PCP). Inside the ice chest that was located in the rear
cargo compartment of the car, officers found two bags, one containing a green, leafy substance that
was later determined to be marijuana, and the other containing a white, rock-like substance that was
later determined to be cocaine. Officers found $537.21 on Sorrells. They did not find a large
amount of money on any of the other people in the car. 

 A chemist testified that the cocaine found in the ice chest weighed approximately
thirty-two grams. Cadena testified that based on his five years of street-patrol experience, the
cocaine found in the ice chest was a "very large" amount of cocaine consistent with an amount a
dealer would carry for deliveries. Another intelligence officer, Jesse Sanchez, testified that based
on his nine years of experience with the Austin Police Department, the amount of cocaine found in
the ice chest was not consistent with personal use but was consistent with an amount carried by drug
dealers. Sorrells was ultimately arrested and charged with possession of and intent to deliver the
cocaine found in the ice chest, and the person sitting next to him in the left rear seat of the car was
arrested and charged with possession of the drugs found on the left rear floorboard. The driver of
the car and the front passenger were both released from the scene. 

 After a trial, a jury convicted Sorrells of possession of a controlled substance with
intent to deliver. Sorrells elected to have the trial court assess punishment. In the indictment, the
State alleged that Sorrells was a habitual offender based on two alleged previous felony convictions
for possession of a controlled substance. At the punishment hearing, Sorrells pled "not true" to the
enhancement allegations. After a hearing, the trial court found that the State proved one of the
previous convictions beyond a reasonable doubt but did not do so for the other one. The trial court
sentenced Sorrells to twenty years in prison. This appeal followed. 


DISCUSSION

 On appeal, Sorrells asserts that: (1) the evidence is legally and factually insufficient
to support his conviction, and (2) his trial counsel provided ineffective assistance. We address each
issue below. 


Legal and Factual Sufficiency

 In determining the legal sufficiency of the evidence, we must view the evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. See Swearingen v. State,
101 S.W.3d 89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the
trier of fact resolved conflicts in favor of the verdict. Fuentes v. State, 991 S.W.2d 267, 271 (Tex.
Crim. App. 1999). 

 In reviewing factual sufficiency, we must weigh all the evidence in a neutral light and
set the finding aside only if the evidence is so weak that the verdict seems clearly wrong or
manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. 
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). An appellate court must be
appropriately deferential to the jury's verdict in order to avoid substituting its own judgment for that
of the factfinder. Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The jury is the sole
judge of the credibility of the witnesses and the weight to be accorded their testimony. Id. 

 Sorrells challenges the legal and factual sufficiency of the evidence to support each
of the three elements of the offense of possession of a controlled substance with intent to deliver. 
To prove the offense, the State must show that the defendant: (1) possessed a controlled substance
in the amount alleged; (2) intended to deliver the controlled substance to another; and (3) knew that
the substance in his possession was a controlled substance. Tex. Health & Safety Code Ann.
§§ 481.002(38), .112(a) (West Supp. 2009); see Figueroa v. State, 250 S.W.3d 490, 500 (Tex.
App.--Austin 2008, pet. ref'd). We address the elements below.


 A. Possession and Knowledge

 To prove possession and knowledge of contraband, the State must prove that the
defendant: (1) exercised control, management, or care over the substance; and (2) knew the
substance was contraband. See Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). 
Where, as here, the accused is not in exclusive possession of the place where the substance is found,
his control over and knowledge of the contraband cannot be established unless there are additional
independent facts and circumstances that link him to the contraband. See id. at 406. The purpose
of linking the accused to the contraband is to protect innocent bystanders from conviction based
solely on their proximity to the contraband. See Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim.
App. 2006). 

 There are several factors by which a defendant may, under the unique circumstances
of each case, be sufficiently linked to the contraband, including: (1) the defendant's presence when
a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity
to and the accessibility of the contraband; (4) whether the defendant was under the influence of
contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when
arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was
an odor of contraband; (10) whether other contraband or drug paraphernalia were present;
(11) whether the defendant owned or had the right to possess the place where the drugs were found;
(12) whether the place where the drugs were found was enclosed; (13) whether the defendant was
found with a large amount of cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt. See Figueroa, 250 S.W.3d at 500. It is not the number of links that is
dispositive, but rather the logical force of all the evidence, direct and circumstantial. Id. at 501. The
force of the links need not be such as to exclude every other alternative hypothesis except the
defendant's guilt. See Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); Figueroa,
250 S.W.3d at 501. 

 The State established the first link--the defendant's presence when a search is
conducted--because officers testified that Sorrells was in the car when the car was stopped and
searched. The third link--the defendant's proximity to and the accessibility of the contraband--was
established by officers' testimony that Sorrells was in the right rear seat of the car and that the ice
chest was within Sorrells's reach in the cargo compartment behind the seat. The State also
established the tenth link--whether other contraband or drug paraphernalia were present--because
officers found marijuana and PCP in plain view on the rear left floorboard of the car. The thirteenth
factor--whether the defendant was found with a large amount of cash--is supported by officers'
testimony that Sorrells was found carrying $537.21, while none of the other people in the car were
found carrying a large amount of cash. (1)

 In addition to the links established during the searches of Sorrells and the car, the
State also established other links between Sorrells and the cocaine found in the ice chest. For
example, Officer Cadena testified that he saw Sorrells carrying the ice chest and placing it in the rear,
cargo compartment of the car. Further, Officer Beasley testified that when he was in his patrol car
behind the car carrying Sorrells, he saw an arm reach over the back seat of the car, lift up the lid of
the ice chest, and reach inside. Several officers also testified that Sorrells was seated in the rear right
seat of the car, and Officer Beasley testified that the only two people who could have reached the ice
chest were the two passengers in the rear seat. 

 Viewing the evidence in the light most favorable to the verdict, we conclude that the
evidence is legally sufficient to establish that Sorrells was in possession of the cocaine. Given the
evidence that Sorrells carried the ice chest to the car; sat in close proximity to the ice chest; was one
of only two people who had access to the ice chest when an officer saw an arm reach behind the seat,
open the ice chest, and reach inside the ice chest; was in a car with other drugs that were in plain
view; and was carrying a large amount of cash; a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Swearingen, 101 S.W.3d at 95. 

 Viewing the evidence in a neutral light, we also conclude that the evidence is factually
sufficient to establish that Sorrells was in possession of the cocaine. Although the officer who saw
one of the backseat passengers reach behind the seat and open the ice chest could not determine
whether it was Sorrells or the man sitting next to him who did so, the evidence that Sorrells carried
the ice chest to the car and that he was carrying a large amount of cash, and the fact that there is no
such evidence against the man who was sitting next to him, is sufficient to support the jury's verdict. 
See Watson, 204 S.W.3d at 414-15. As previously stated, the force of the links need not be such as
to exclude every other alternative hypothesis except the defendant's guilt. See Brown, 911 S.W.2d
at 748; Figueroa, 250 S.W.3d at 501.


 B. Intent

 To prove that a defendant intended to deliver a controlled substance, the State must
show that the defendant intended to "transfer, actually or constructively," a controlled substance to
another person. See Tex. Health & Safety Code Ann. §§ 481.002(8). Factors that courts have
considered in determining whether the accused had the intent to deliver include: (1) the nature of
the location at which the accused was arrested; (2) the quantity of drugs in the accused's possession;
(3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia for either
use or sale; (5) the accused's possession of large amounts of cash; and (6) the accused's status as a
drug user. See Utomi v. State, 243 S.W.3d 75, 82 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd);
Jordan v. State, 139 S.W.3d 723, 726 (Tex. App.--Fort Worth 2004, no pet.). Expert testimony by
experienced law-enforcement officers may also be used to establish an accused's intent to deliver. 
See Utomi, 243 S.W.3d at 82. 

 The evidence presented to the jury included: a chemist's testimony that the cocaine
found in the ice chest weighed approximately thirty-two grams; Officer Cadena's testimony that
there were "multiple rocks" of cocaine found in the ice chest, that a personal-use amount of cocaine
would be only one rock, and that based on his five years of street-patrol experience, the cocaine was
a "very large" amount of cocaine consistent with an amount a dealer would carry for deliveries;
Officer Sanchez's testimony that people using cocaine for themselves use only one rock and that
based on his nine years of experience in the police department, the multiple rocks of cocaine found
in the ice chest were not consistent with personal use but were consistent with an amount carried by
drug dealers; and Officer Beasley's testimony that Sorrells was carrying $537.21 in cash at the time
of the traffic stop. 

 Considering the volume of cocaine found in the ice chest, the expert testimony of
experienced law-enforcement officers as to the implications of the volume of cocaine, and the
amount of cash found on Sorrells, we conclude that the evidence is legally sufficient to support the
jury's determination that Sorrells intended to deliver the cocaine. We also conclude that the
evidence is factually sufficient to support such a determination because there is no evidence in the
record contradicting any of the officers' testimony, nor is the cumulative force of the officers'
testimony so weak that the verdict seems clearly wrong or manifestly unjust or against the great
weight and preponderance of the evidence. See Watson, 204 S.W.3d at 414-15.


 C. Conclusion Regarding Sufficiency of the Evidence

 Because we have concluded that the evidence is legally and factually sufficient to
support Sorrells's conviction, we overrule Sorrells's first issue. 

 

Ineffective Assistance of Counsel 

 To prevail on a claim of ineffective assistance of counsel, a defendant must show that:
(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness,
and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or
fundamentally unfair outcome of the proceeding. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting Strickland
two-prong test). To establish deficient performance as a matter of law under the first prong, a
defendant must show that no reasonable trial strategy could justify counsel's conduct. See
Strickland, 466 U.S. at 689; Andrews v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). A
defendant establishes prejudice under the second prong if he shows that a reasonable probability
exists that, but for the deficient performance, the outcome of the proceeding would have been
different. See Strickland, 466 U.S. at 694; Ex parte Cash, 178 S.W.3d 816, 818 (Tex. Crim. App.
2005). A reasonable probability is a probability sufficient to undermine confidence in the outcome. 
Strickland, 466 U.S. at 694.

 It is the defendant's burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In
determining whether an attorney's performance was deficient, we apply a strong presumption that
the attorney's conduct was within the wide range of reasonable professional assistance. Id. We
review the effectiveness of counsel in light of the totality of the representation and the circumstances
of each case. Id. In most cases, an undeveloped record on direct appeal is insufficient to satisfy the
requirements of Strickland because the reasonableness of counsel's decisions often involves facts
not appearing in the appellate record. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App.
2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial,
an appellate court should presume a sound trial strategy. See Thompson, 9 S.W.3d at 814.

 Sorrells alleges that his trial counsel provided ineffective assistance by failing to
properly object to: (1) the admission of contextual evidence showing the existence of warrants for
Sorrells's arrest; and (2) certain statements made in a patrol-car video of the traffic stop of the car
in which Sorrells was traveling. We address each allegation in turn.


 A. Admission of Contextual Evidence

 In his first allegation of ineffective assistance, Sorrells argues that his trial counsel
was deficient in failing to properly object to the admission of contextual evidence showing the
existence of warrants for Sorrells's arrest. Before trial, Sorrells's trial counsel filed a motion in
limine that sought to exclude any references to extraneous offenses or "an open warrant." In a pre-trial hearing on the matter, the prosecutor argued that the State needed to refer to the open warrant
for Sorrells's arrest because doing so explained why the police officers were outside the home where
Sorrells was located and why the officers then followed and stopped the car in which he was
traveling. The trial judge agreed, stating that "you can't have two cops dropping down from a space
ship." The trial judge further explained that juries were sensitive to issues like racial profiling and
police-officer abuse and may begin speculating about such things if they were not informed of the
reasons why the police officers observed and stopped Sorrells.

 After further discussion about the issue, the trial court determined that a reference to
"a warrant" would be sufficient to explain the reason for the stop. The prosecutor then explained
that the problem with using only a "warrant" rather than "warrants" was that in the video of the
traffic stop, the officers used the two terms interchangeably. The prosecutor furthered explained that
the State had already redacted several portions of the video in which references were made to an
"aggravated assault," and it would be difficult to also redact all the portions where officers used the
term "warrants" because it happened frequently throughout the video. The trial court ultimately
determined that the State and its witnesses could refer to either warrant or warrants but that defense
counsel was welcome to ask for a limiting instruction at any point, and the court would comply
with his request. 

 The first portions of testimony of which Sorrells complains on appeal are ones in
which Officer Cadena testified as to his and other officers' reasons for surveilling the house where
Sorrells was located. In the first portion, Cadena stated that he and other officers were surveilling
the house because they had "obtained information that [Sorrells] had a warrant." In the second
portion, Cadena stated: 


 We set up on a house . . . and we were specifically looking for [Sorrells]. We
observed some activity; however, we did not see [Sorrells]. Some of the members
of our unit broke off and checked side streets, in which case one officer spotted
[Sorrells], and then we moved our surveillance to that other location.



 Defense counsel did not object to either portion of Cadena's testimony. However,
after Cadena finished testifying, defense counsel requested a limiting instruction from the trial court
regarding references to a warrant. The trial court complied, stating:


 Ladies and gentlemen of the jury, I am going to give you an instruction to guide you
in consideration of certain evidence. The evidence concerns testimony of an existing
warrant on this defendant, testified to by this officer, and you may hear testimony in
the remainder of the trial from other witnesses concerning an existing warrant at the
time of this stop on this occasion. 


 Listen carefully as I read this instruction to you at this time. Evidence concerning an
existing warrant against this defendant is not any evidence of the defendant's guilt
in this case, and is no evidence that the defendant is or was guilty of any offense,
including the case for which the warrant existed. The sole purpose for which the
evidence is offered is to put in context the circumstances under which the defendant
was confronted by police officers.



 On appeal, Sorrells claims that defense counsel provided deficient performance by
failing to make a pre-trial request for the trial court to prohibit any mention of the fact that Sorrells
was the target of the officers' surveillance. Sorrells suggests that defense counsel could have
avoided the need for such testimony by requesting a joint stipulation that the surveillance and the
traffic stop were legal or by requesting that officers state only that they obtained information causing
them to surveil the area and then observed Sorrells placing the ice chest into the car. However,
Sorrells did not file a motion for new trial in this case, and the record remains undeveloped as to
defense counsel's reasons for not requesting such an instruction. In the absence of a developed
record, we presume a sound trial strategy. See Ortiz v. State, 93 S.W.3d 79, 88-89 (Tex. Crim. App.
2002); Thompson, 9 S.W.3d at 814. 

 Further, defense counsel had already addressed the issue of references to a warrant
or warrants with regard to officers' reasons for surveilling the area, and the trial court explained that
such references were necessary to explain the officers' surveillance of the house and the eventual
traffic stop of the car that left the house. Defense counsel also requested a limiting instruction as to
any references to warrants, and the trial court complied with the request. Defense counsel could
have reasonably determined that, given the trial court's concerns about creating a context for the
surveillance and traffic stop, a limiting instruction was the best option for addressing the situation. 
Further, defense counsel could have reasonably concluded that the limiting instruction was sufficient
to cure any error caused by references to warrants for Sorrells's arrest. See Thrift v. State,
176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (jury presumed to follow trial court's instructions
when no evidence presented to rebut presumption). 

 The second portion of testimony of which Sorrells complains is one in which Officer
Sanchez is asked what Sorrells was charged with at the time of his arrest and replies, "He had
outstanding warrants, felony warrants for his arrest . . . ." At that point, defense counsel asked to
approach the bench, where he requested that the trial court instruct the jury to disregard Sanchez's
last remark. The trial court complied with the request. On appeal, Sorrells asserts that defense
counsel provided deficient performance by failing to request a mistrial. However, the record is silent
as to defense counsel's reasoning for not requesting a mistrial, and we therefore presume a sound
trial strategy. See Ortiz, 93 S.W.3d at 88-89; Thompson, 9 S.W.3d at 814. In addition, an instruction
to disregard inadmissible testimony is generally sufficient to cure any error caused by the testimony. 
See Delgado v. State, 986 S.W.2d 306, 309 (Tex. App.--Austin 1999, no pet.); Whitaker v. State,
977 S.W.2d 595, 600 (Tex. Crim. App. 1998). A mistrial, on the other hand, is appropriate for only
a narrow class of highly prejudicial and incurable errors. See Young v. State, 137 S.W.3d 65, 69
(Tex. Crim. App. 2004); Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Thus, defense
counsel could have reasonably concluded that an instruction to disregard the inadmissible testimony
was sufficient to cure any error created by the testimony, especially considering that the trial court
had already given the jury a limiting instruction regarding any references to warrants for
Sorrells's arrest. 

 The third portion of testimony of which Sorrells complains is one in which Officer
Beasley testified about conducting a traffic stop of the car in which Sorrells was traveling. The
testimony occurred in the following exchange between the prosecutor and Beasley:


 Beasley: Because of the situation, we generally like to do like a felony stop. 
It is a high-risk stop. We kind of position ourselves behind the
vehicle, so the vehicle rolled to a stop. My vehicle was parked at the
right side of the other police vehicle, and I saw the vehicle pull up
and then stop. We went from there and proceeded with getting
everybody out. 


 State: When you say high-risk stop, you mean you want to take all the
precautions you can?


 Beasley: Yes.


 State: Just in case something might go wrong?


 Beasley: Yes. Usually the units that call us are surveilling somebody of
interest. Generally it is an important thing.



 At that point in the exchange, defense counsel asked to approach the bench and stated,
"We are sort of heading down that same trail. I want to be sure the officer has been apprised." The
prosecutor assured the trial court that the officer had been informed of what he could and could not
say, and the prosecutor stated, "I won't ask any more questions." The trial court then suggested to
the prosecutor that he ask somewhat leading questions if he wanted to pursue similar subjects in the
future so as to guide the State's witnesses to avoid any inadmissible testimony. The prosecutor
indicated that he would do so. 

 On appeal, Sorrells alleges that his defense counsel provided deficient performance
by failing to properly object to the testimony or move for a mistrial. However, because the record
is once again silent as to defense counsel's reasoning for his actions, we presume a sound trial
strategy. See Ortiz, 93 S.W.3d at 88-89; Thompson, 9 S.W.3d at 814. Further, the only additional
testimony that arose in the exchange was that officers considered the traffic stop a "high-risk stop"
and an "important thing." Jurors had already heard testimony to the effect that Sorrells had felony
warrants for his arrest and that he was a person of interest to the surveillance unit, and the trial court
had already instructed the jury to limit or disregard certain portions of the testimony. In addition,
defense counsel approached the bench upon hearing the offending testimony, and further questioning
did not continue until after the prosecutor indicated that he would not ask any more questions on the
subject. Given the circumstances, defense counsel could have reasonably concluded that his actions
were sufficient to address the situation. 

 A final portion of testimony of which Sorrells complains is one in which Officer
Cadena was asked why he and other officers would need to search the ice chest found in the back
of the car in which Sorrells was traveling, and Cadena responded: "It would have been very easy for
either one of the two rear passengers to reach into that rear cooler and grab potentially a weapon or
any other instrument that could hurt us or anybody else in the community, which is why that cooler
needed to be checked." On appeal, Sorrells asserts that his defense counsel provided deficient
performance by failing to object to the testimony on the ground that the testimony suggested that
Sorrells was carrying a weapon or was otherwise dangerous. Because the record is silent as to
defense counsel's reasoning for not objecting, we presume a sound trial strategy. See Ortiz,
93 S.W.3d at 88-89; Thompson, 9 S.W.3d at 814. Further, there was no evidence introduced at trial
to suggest that there were in fact any weapons found in the ice chest or anywhere else at the scene. 
In addition, defense counsel challenged the testimony during his cross-examination of Cadena:


 Defense: And I am a little perplexed about this cooler. You had testified earlier
you thought maybe there might be weapons in there or something to
that effect; is that correct?


 Cadena: That is correct.


 Defense: If you guys are being so cautious with the cooler thinking there [are]
weapons in it, why would you allow the lid to open up and drop it on
the ground if there . . . is [sic] if you think there is a gun in there? (2)


 Cadena: It is possible.


 Defense: It would take two seconds to stand up and set the thing down on the
floor correctly, would it not?


 Cadena: True. 



Given all the circumstances, defense counsel could have reasonably determined that he would
address the testimony during cross-examination and that an objection to the testimony was
not warranted. 

 Because the record is undeveloped with regard to defense counsel's reasoning for his
actions, and because his actions could reasonably have been part of a sound trial strategy, we
conclude that Sorrells has not proven by a preponderance of the evidence that defense counsel
provided deficient performance with regard to the contextual evidence admitted at trial. See
Strickland, 466 U.S. at 689. 


 B. Admission of Statements Made in Video 

 In his second allegation of ineffective assistance, Sorrells contends that his trial
counsel was deficient because he failed to properly object to certain statements made in a patrol-car
video of the traffic stop of the car in which Sorrells was traveling. (3)
 Specifically, Sorrells complains
of the following parts of the video: (1) a dispatcher's statement that "he has two felonies"; (2) a
police officer's statement that "Derrick has two"; (3) Sorrells's request to police officers that they
tell him "who called on him"; (4) a police officer's statement that "that's our boy"; and (5) Sorrells's
statement to the effect that he was sorry that the officers "had to come find [him] for this again." 
Sorrells first contends that his trial counsel should have objected to the admission of any statements
made by him on the ground that the police officers at the traffic stop failed to read him his Miranda
rights. See Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). He also contends that his trial counsel
should have objected to the admission of any statements referencing other crimes based on rule
404(b) of the Texas Rules of Evidence. See Tex. R. Evid. 404(b) ("Evidence of other crimes,
wrongs or acts is not admissible to prove the character of a person in order to show action in
conformity therewith."). 

 To begin with, the record does not establish that officers did not read Sorrells his
Miranda rights. In citing to the record for this argument, Sorrells cites only to his trial counsel's
opening argument, in which trial counsel stated that Sorrells was not read his Miranda rights, and
to the video, in which there is no evidence that Sorrells was read his rights. However, defense
counsel's argument to the jury is not evidence, see Hutch v. State, 922 S.W.2d 166, 173 (Tex. Crim.
App. 1996), and the absence of audible Miranda warnings in the video does not necessarily establish
that they were not given. There are a multitude of voices on the videotape, many of which are
unintelligible, and the video camera covered only some of the events associated with the traffic stop. 
Thus, the record does not establish that officers did not read Sorrells his Miranda rights. Further,
we presume trial counsel's strategy was sound given that the record is silent as to his reasoning. See
Ortiz, 93 S.W.3d at 88-89; Thompson, 9 S.W.3d at 814. Accordingly, we conclude that trial counsel
was not deficient in declining to object to the video based on Miranda. 

 We also conclude that trial counsel was not deficient in failing to object to references
made to other crimes committed by Sorrells. As previously mentioned, the trial court had already
determined that references to one or two warrants for Sorrells's arrest were admissible as contextual
evidence, and had already provided a limiting instruction regarding the jury's consideration of any
references to warrants for Sorrells's arrest. Also, the statements made in the video, such as the
dispatcher's statement that "he has two felonies," were made amid a multitude of voices and without
reference to any particular person. For example, the dispatcher could have been referring to any one
of the four men taken from the car when stating that "he" had two felonies. An officer's later
statement that "Derrick has two" provides Sorrells's first name, but it is also one of many
unidentifiable voices and was not made in reference to any particular subject. Given the limiting
instruction already provided by the trial court, the unintelligibility of much of the language in the
video, the difficulty in establishing who is speaking in the video, and the applicable presumption of
a sound trial strategy, we conclude that Sorrells has failed to show that trial counsel provided
deficient performance in declining to object to comments made in the video. 


 C. Conclusion Regarding Ineffective Assistance

 Because we have concluded that Sorrells's trial counsel was not deficient in declining
to object to references to warrants for Sorrells's arrest and certain statements made in a video of the
traffic stop of the car in which Sorrells was traveling, we hold that Sorrells has failed to carry his
burden of proving by a preponderance of the evidence that his trial counsel provided ineffective
assistance. Strickland, 466 U.S. at 687-89. 


CONCLUSION 

 Given our determination that the evidence is legally and factually sufficient to support
Sorrells's conviction and that Sorrells has failed to carry his burden of proving by a preponderance
of the evidence that his trial counsel provided ineffective assistance, we affirm the trial
court's judgment. 



 __________________________________________ David Puryear, Justice 

Before Chief Justice Jones, Justices Puryear and Henson 

Affirmed

Filed: April 9, 2010

Do Not Publish 
1. Sorrells argues that $537.21 does not qualify as a "large amount of cash." However, at
least two of our sister courts have found a link between defendants and contraband based on
evidence that the defendants were carrying approximately the same amount of money as carried by
Sorrells in this case. See Johnson v. State, No. 10-06-00078-CR, 2007 Tex. App. LEXIS 2001, at
*9 (Tex. App.--Waco March 14, 2007, pet. ref'd) (mem. op., not designated for publication) (link
established where evidence showed that defendant had $516); Bean v. State, Nos. 05-06-01487-CR,
05-06-01488-CR, 05-06-01489-CR, 2007 Tex. App. LEXIS 8914, at *14 (Tex. App.--Dallas
Nov. 8, 2007, pet. ref'd) (mem. op., not designated for publication) (link established where evidence
showed defendant had more than $500). 
2. Cadena had testified that "the cooler kind of fell to its side when [officers] set it down, and
the cooler opened."
3. In the video, police officers stop the car in which Sorrells is traveling and then direct each
of the four men out of the car, one by one. Officers then take the men out of range of the video
camera and begin searching the car. For most of the rest of the video, various voices are audible at
different times but are not necessarily intelligible and cannot necessarily be matched with specific
people, as the people speaking are often outside the camera's range.