

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00480-CR

Beau Preston **JONES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR6429
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: August 6, 2025

VACATED IN PART; AFFIRMED IN PART

Following a jury trial, appellant Beau Preston Jones was convicted of one count of possession of a controlled substance with intent to deliver in an amount of 4 grams or more but less than 200 grams, and one count of possession of a controlled substance in an amount of 4 grams or more but less than 200 grams. On appeal, Jones presents the following issues: (1) double jeopardy bars conviction of both possession and possession with intent to deliver when the two charges arise from the same alleged transaction and involve the same controlled substance; (2) the

evidence presented at trial is insufficient to establish affirmative links between him and the contraband found in a vehicle; and (3) the trial court's comments in front of the jury created an unfair environment that violated Jones's due process right to a fair trial.

We agree double jeopardy bars the conviction for possession of a controlled substance under the facts of this case. However, after reviewing the record and the parties' briefing, we conclude the evidence is sufficient to uphold Jones's conviction for possession with intent to deliver, and the trial court's comments in front of the jury did not create an unfair environment that violated Jones's due process right to a fair trial. Therefore, we vacate the judgment of conviction for possession of a controlled substance, and we affirm the judgment of conviction for possession of a controlled substance with the intent to deliver.

### BACKGROUND

On November 13, 2021, Officer Alexander Blanton was dispatched to an abandoned house to investigate an alleged burglary in progress of vehicles stored in the back of the residence. Officer Blanton had previously been dispatched to this property for the same reason. When Officer Blanton arrived at the property, he saw a large truck parked on the street and a second truck with a large trailer that had been backed into the driveway near the vehicles in the back of the residence. Officer Blanton then encountered three men in the back of the property, including Jones. The other two men had active warrants for their arrest. Officer Blanton questioned them regarding their activities at the house. Jones stated he had ridden to the house in the truck with the trailer, and he explained he was there to retrieve two vehicles from the property. Jones attempted to convince Officer Blanton that they were lawfully retrieving the vehicles by showing an image on his cell phone that Jones asserted was a bill of sale for one of the vehicles to Officer Blanton, and by calling a woman named Christina Garza and handing his phone to Officer Blanton to speak with her. Jones stated

that Garza had given him the vehicle retrieval job. Additional police officers arrived at the house including Officer William Morgan. After Office Blanton ended the call and gave Jones his cell phone back, Jones began speaking on his phone again, and several minutes later, Officer Morgan told Jones to get off his phone and attempted to handcuff him, but Jones refused to cooperate. Several officers struggled to get Jones's hands behind his back and handcuff him. Jones was arrested and transported to the county jail.

Officer Jairo Sanchez arrived on the scene to conduct an inventory search of the truck with the large trailer that had been backed into the driveway, and to impound the truck. Officer Sanchez discovered a backpack in the truck on the floormat of the front passenger seat, and then he removed numerous items from the backpack, including a pipe used to smoke narcotics, a digital scale, several baggies with logos containing narcotics, two magazines for a handgun, a handgun, an accordion folder, paperwork, and a pill bottle. The narcotics were later tested and weighed; they were determined to be 74.4 grams of methamphetamine.

Following Jones's indictment for possession and possession with intent to deliver, a jury trial was held. The jury found Jones guilty of possession of a controlled substance with intent to deliver in an amount of 4 grams or more but less than 200 grams, and possession of a controlled substance in an amount of 4 grams or more but less than 200 grams. The trial court sentenced Jones to five years in the Texas Department of Criminal Justice—Institutional Division for each count to run concurrently. Jones appeals.

**DOUBLE JEOPARDY**

First, Jones argues that his convictions and sentences for both possession and possession with intent to deliver violate the double jeopardy clause because possession is a lesser-included offense of possession with intent to deliver. Therefore, Jones argues his conviction for simple

possession should be vacated. In its brief, the State concedes this issue and also asks this court to vacate the conviction for the simple possession offense based on double jeopardy. "Because double jeopardy concerns affect fundamental, constitutional rights, they 'may be raised for the first time on appeal[.]'" *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023) (quoting *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)). Therefore, we will review the double jeopardy issue. *See id.*

"Under principles of double jeopardy, no person may be 'subject for the same offence to be twice put in jeopardy of life or limb.'" *Id.* (quoting U.S. CONST. amend. V). The Fifth Amendment Double Jeopardy Clause offers protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Id.* "A claim of multiple punishments may be valid if one offense is a lesser-included offense of the other and the same conduct is punished twice or if the same criminal act is punished under two distinct statutes when the legislature intended the conduct to be punished under either statute, but not both." *Weinn v. State*, 326 S.W.3d 189, 192 (Tex. Crim. App. 2010). An offense is a lesser-included offense if, among other things, it is established by proof of the same or less than all the facts required to establish the commission of another offense charged. TEX. CODE CRIM. PROC. art. 37.09(1); *Berger v. State*, 104 S.W.3d 199, 205 (Tex. App.—Austin 2003, no pet.).

Here, Jones argues and the State concedes that the simple possession charge is a lesser-included offense of possession with intent to deliver because both charges arise from Jones's alleged possession of one quantity of methamphetamine. *See Weinn*, 326 S.W.3d at 194 (holding a single act of simultaneous manufacture and resulting possession with intent to deliver with respect to a single quantity of a controlled substance constitutes a single violation); *Berger*,

104 S.W.3d at 205. Furthermore, Jones argues and the State concedes that punishment for both offenses arising from the same criminal transaction—possession of the methamphetamine—is barred by double jeopardy. *See Berger*, 104 S.W.3d at 205. We agree.

"When a defendant is convicted in a single criminal trial of two offenses that are considered the same for double jeopardy purposes, the remedy is to vacate one of the convictions." *Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018). When deciding which conviction should be vacated, the Court of Criminal Appeals has instructed that the most serious offense should be retained. *Id.* "The 'most serious offense' is the offense of conviction for which 'the greatest sentence was assessed.'" *Id.* (quoting *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006)). If the sentences are the same for both convictions, the Court of Criminal Appeals has indicated the prosecutor should be given the opportunity to elect which conviction is retained. *Id.* at 188–89.

Here, the trial court assessed the same punishment for both convictions; therefore, the prosecutor may elect which conviction should be retained. *Id.* The State has requested that the conviction for Count I—possession, with intent to deliver, of a controlled substance in an amount 4 grams or more but less than 200 grams—be retained. Accordingly, we vacate the trial court's judgment on Count II—possession of a controlled substance in an amount 4 grams or more but less than 200 grams.

## SUFFICIENCY OF THE EVIDENCE

Second, Jones argues the evidence was insufficient to prove he was guilty of possession and possession with intent to deliver. Specifically, Jones contends no rational jury could have found Jones had care, custody, or control of the methamphetamine in question. Because we vacate Jones's simple possession conviction on double jeopardy grounds, we analyze the sufficiency of

the evidence supporting his conviction for possession with intent to deliver (Count I).

**A. Standard of Review, Applicable Law, and Evidence Presented at Trial**

In reviewing the sufficiency of the evidence, we will consider the evidence in the light most favorable to the verdict to determine whether a rational juror could have found Jones guilty beyond a reasonable doubt based on proof of the essential elements of the offense charged. *Baltimore v. State*, 689 S.W.3d 331, 341–42 (Tex. Crim. App. 2024). We will not disturb the trier of fact's full responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences based on the evidence presented. *Id*. Jurors are permitted to draw reasonable inferences from the evidence presented at trial, so long as each inference is supported by evidence. *Id.* They "may use common sense, common knowledge, personal experience, and observations from life when drawing those inferences." *Id.* They are not allowed, however, to come to conclusions based on speculation. *Id.*

When determining sufficiency, we will compare the evidence presented to the essential elements of the offense as defined by a hypothetically correct jury charge. *Id.* at 341. A hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense." *Id.*

The elements of possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance in the amount alleged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See* TEX. HEALTH & SAFETY CODE § 481.112(a); *Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd). Unlawful possession is proven when (1) the accused exercised control, management, or care over the substance and (2) the accused knew the matter

possessed was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *see* TEX. HEALTH & SAFETY CODE § 481.115(a) (simple possession statute); *see also id.* at § 481.002(38) (defining possession to mean "actual care, custody, control, or management").

### 1. Possession

Going to the first element, Jones's exercise of control, management, or care over the substance, the question is whether there is enough evidence for the jury to infer that Jones intentionally or knowingly possessed the contraband. *See Tate*, 500 S.W.3d at 413–14 (citing *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)). Because "[a] defendant's mere presence is insufficient to establish possession," we must look to direct or circumstantial evidence to establish whether the defendant's connection with the contraband was more than fortuitous. *Tate*, 500 S.W.3d at 413; *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

To help guide our analysis, we consider a non-exclusive list of fourteen factors, known as "affirmative links," provided by the Texas Court of Criminal Appeals. *Tate*, 500 S.W.3d at 414. These factors may, either singly or cumulatively, establish a person's possession of contraband. They include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* (quoting *Evans*, 202 S.W.3d at 162 n.12). The number of links is not dispositive; rather, we must consider whether the logical force of the circumstantial evidence supports the jury's verdict.

*Evans*, 202 S.W.3d at 162. Finally, the absence of some links does not undermine the links present in the case. *See id.*

At trial, several officers testified. Officer Blanton testified and his bodycam video from the incident was entered into evidence. The bodycam footage shows that when Officer Blanton first arrived at the scene, Jones and two other men were towards the back of the abandoned property. Jones was standing behind the truck with the trailer that had been reverse-parked into the property's driveway. One of the other men indicated that he owned the truck with the trailer and Jones stated that he had ridden to the property in that truck.

Officer Sanchez, who conducted the inventory search of the truck with the large trailer, also testified and his bodycam footage was, as well, entered into evidence. The bodycam video shows that Officer Sanchez pulled several black baggies from the backpack, looked inside one and stated "bingo," and then informed another officer that he found "crystal meth" in the black baggies. In the bodycam video, Officer Sanchez pulls out paperwork from the backpack and says "Jones" as he reads from the paperwork. He then pulls out a pill bottle and says, "Now we know who it belongs to." Officer Sanchez testified that the document from the backpack appeared to be medical paperwork, and the last name "Jones" was on the top of the page, with the first name "Beau." Officer Sanchez also testified that the pill bottle from the backpack contained Jones's name.

Officer William Morgan testified that when he arrived at the abandoned house, Jones appeared to be under the influence of some type of narcotics, because he was sweating heavily, had glassy bloodshot eyes, and was acting belligerent. Officers Sanchez and Dwyer testified that CSI tested the narcotics found in the backpack, and Officer Dwyer testified the narcotics were confirmed to be 74.4 grams of methamphetamine.

**2. Intent to Deliver**

The second element, intent to deliver, may be proved by circumstantial evidence, including actual possession and the quantity of drugs involved. *Espino-Cruz v. State*, 586 S.W.3d 538, 546 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *see Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Intent to deliver can also be inferred from the acts, words, and conduct of the defendant. *Espino-Cruz*, 586 S.W.3d at 546; *Utomi*, 243 S.W.3d at 82. Factors that courts consider in determining intent to deliver include (1) the nature of the location at which the defendant was arrested, (2) the quantity of the contraband in the defendant's possession, (3) the manner of the packaging of the contraband, (4) the presence of or lack of narcotics paraphernalia for either use or sale, (5) large amounts of cash, and (6) the defendant's status as a narcotics user. *Espino-Cruz*, 586 S.W.3d at 546; *Utomi*, 243 S.W.3d at 82. Expert testimony from an experienced law enforcement officer may be used to establish a defendant's intent to deliver. *Utomi*, 243 S.W.3d at 82–83.

In addition to the baggies with narcotics, the paperwork, and the pill bottle, Officer Sanchez discovered other items in the backpack, including a pipe used to smoke narcotics, a digital scale, two magazines for a handgun, a handgun, and an accordion folder which Officer Dwyer testified appeared to be set up to operate like a cash register. Officer Sanchez also testified that the coloration of the baggies and the logos on them are a trademark of drug dealing based on his knowledge and experience.

**B. Analysis**

Here, mindful of the standard of review set out above, *see Baltimore*, 689 S.W.3d at 341–42, a comparison of the evidence produced at trial to the essential elements of the offense as defined by the hypothetically correct jury charge shows a rational juror could have found beyond

a reasonable doubt that Jones knowingly possessed at least 4 grams of methamphetamine and intended to deliver the methamphetamine. *See* TEX. HEALTH & SAFETY CODE § 481.112(a); *Figueroa*, 250 S.W.3d at 500.

It is undisputed that the black backpack found in the truck with the trailer contained more than 4 grams of methamphetamine. Furthermore, sufficient "affirmative links" exist here to support an inference that Jones knowingly possessed the methamphetamine. While Jones contends there is insufficient evidence of possession because he did not own the vehicle where the narcotics were found and the paperwork and pill bottle were not barcoded and entered into evidence,[1] Officer Sanchez's testimony that his name was on the paperwork and pill bottle found inside the backpack could be considered by the jury. "It is the province of the jury"—not our court—"to assess the credibility and demeanor of the witnesses." *Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013). And, it is within the province of the jury to determine the weight they give the evidence. *Id.*

Jones does not advance on appeal any argument that the evidence is insufficient to establish the element of intent to deliver. Even so, the evidence established a large quantity of confiscated contraband, the presence of narcotics paraphernalia including a digital scale, numerous baggies, and an accordion folder set up like a cash register. Thus, the record establishes sufficient circumstantial evidence to support a rational juror's conclusion that Jones possessed the methamphetamine with the intent to deliver. *See Espino-Cruz*, 586 S.W.3d at 546; *Utomi*, 243 S.W.3d at 82–83; *Baltimore*, 689 S.W.3d at 341–42.

Because the evidence presented is sufficient to support the jury's verdict, we overrule

---

[1] The narcotics, the scale, and the accordion folder were barcoded, but none of the other items from the backpack were barcoded or entered into evidence. Narcotics were entered as evidence at trial in envelopes that Officer Dwyer confirmed corresponded to the barcodes for the narcotics from the backpack.

Jones' point of error relating to sufficiency of the evidence. *See Evans*, 202 S.W.3d at 162; *Tate*, 500 S.W.3d at 413–14.

**COMMENTS MADE BY THE TRIAL COURT**

In his third issue, Jones asserts the trial court's comments in front of the jury created an unfair environment that violated Jones's due process right to a fair trial. Specifically, Jones references three comments made by the trial court in the presence of the jury. First, when defense counsel was cross-examining Officer Morgan, the prosecutor objected that defense counsel was being argumentative. The trial court then stated: "About time. Please, one at a time. If you're going to ask a question, please let him answer and then ask another one." Second, when the prosecutor objected that defense counsel was speaking over Officer Morgan and not letting him answer, the trial court stated: "Do me a favor. Ask a question. Let him answer. Then ask another one. Don't talk over him. You'll have plenty of time to ask all the freaking questions you want. Just let him answer. Because you're driving her [presumably the court reporter] crazy." Third, when the State objected that defense counsel was testifying, the trial court stated: "Well, then stop. Okay. Hang on. Ladies and gentlemen—ladies and gentlemen, disregard Counsel's last statement. It wasn't in the form of a question. He's not allowed to just testify in front of you. He knows better. Ask a question."

**A. The record does not demonstrate a clear unconstitutional bias.**

Both the United States Constitution and the Texas Constitution prohibit an accused from being deprived of life, liberty, or property, without the due process of law. U.S. CONST. amend. V, XIV; TEX. CONST. art. I, § 19. In the context of a trial, "[d]ue process requires a neutral and detached body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Judicial bias may be presumptive or actual. Presumptive bias exists where a judge's interest in the outcome

of a case objectively "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009); *see also* TEX. CONST. art. V, § 11 (prohibiting judges from sitting in cases where the judge is interested, related to a party, or where the judge acted as counsel in the case). Actual bias exists where a judge possesses "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Abdygapparova v. State*, 243 S.W.3d 191, 210 (Tex. App.—San Antonio 2007, pet. ref'd). Actual bias may arise where the judge improperly relies on an "extrajudicial source" or "evidence[s] the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Liteky*, 510 U.S. at 555.

"Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Id.* at 551; *Abdygapparova*, 243 S.W.3d at 198. "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. This includes "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Id.* at 555–56. Ordinary efforts at courtroom administration—even stern and short-tempered—remain immune. *Id.*

Jones argues the three comments by the trial court deprived him of his due process right to a fair trial. But, a review of the record demonstrates that the trial court's statements represented an overriding concern to efficiently administer justice during a jury trial and did not reflect the trial judge's views on Jones's guilt or innocence. *See Liteky*, 510 U.S. at 555–56; *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) ("[A] trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence.").

Based on the record before us, we cannot say that Jones has clearly shown an actual bias on the part of the trial judge. Thus, we overrule Jones's third issue, relying on a claim of unconstitutional bias. *Liteky*, 510 U.S. at 551; *Abdygapparova*, 243 S.W.3d at 198.

### B. Jones did not preserve error regarding any comment on the weight of the evidence.

Having concluded the trial court's comments did not exhibit unconstitutional bias, we next examine Jones's assertion that the trial court's comments could have been interpreted by the jury as improper comments on the weight of the evidence. In addition to constitutional protections, Texas law prohibits a trial court from commenting on the weight of evidence. TEX. CODE CRIM. PROC. art. 38.05. Because jurors are prone to seize upon any conduct or language of the trial judge which they may interpret as shedding light on the judge's view of the merits, a trial court is required to be alert in its communications with the jury—not only to avoid impressing them with any view that it has, but to avoid in its manner and speech things that they may so interpret. *Abdygapparova*, 243 S.W.3d at 209–10 (citing *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919)).

"To constitute reversible error under Article 38.05, the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights." *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981); *see Davis v. State*, 651 S.W.2d 787, 790 (Tex. Crim. App. 1983). In order to be reasonably calculated to benefit the State or prejudice the defendant's rights, the comments must "[rise] to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper*, 61 S.W.3d at 421. "It is not improper for a trial judge to interject in order to correct a misstatement or misrepresentation of previously admitted testimony." *Id.* "Further, a trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence." *Id.*

"If raised as a freestanding statutory complaint, error under Article 38.05 is subject to non-constitutional harm analysis." *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017); *see Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005) ("In summary, when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis[.]"). But, here, Jones failed to object at the time the trial court made the three comments to which he cites on appeal. *See Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986) ("[S]ince appellant made no objection at the time the statement [comment on the evidence] was made, nothing was presented for review."). But, even if the issue was preserved, we do not see in the record before us any indication that the trial judge's comments could be taken as an indicator of the judge's view of the merits or the weight to be given the evidence presented. Accordingly, we overrule Jones's point of error to the extent it relates to an allegedly improper comment on the evidence.

## CONCLUSION

We vacate the trial court's judgment of conviction on Count II of the indictment for possession of a controlled substance in an amount of 4 grams or more but less than 200 grams. We affirm the trial court's judgment of conviction on Count I of the indictment for possession with intent to deliver a controlled substance in an amount of 4 grams or more but less than 200 grams.

Lori Massey Brissette, Justice

DO NOT PUBLISH